CHRISTIANSON v. KING COUNTY.

(Circuit Court of Appeals, Ninth Circuit. March 10, 1913.)

No. 2,163.

1. STATUTES (§ 54*)—TERRITORIES—PROBATE COURTS.

Under Act Cong. March 2, 1853, c. 90, 10 Stat. 172, establishing the territory of Washington, section 9 providing that the judicial power of the territory shall be vested in the Supreme Court, district courts, probate courts; and in justices of the peace, and that the jurisdiction of the probate courts and justices of the peace shall be established by law, it was competent for the legislative assembly to establish probate courts and confer on them full power and authority in all probate proceedings, which was done by Wash. Sess. Acts 1854–62, p. 315, and by Laws 1862–63, p. 198 et seq.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 52; Dec. Dig. § 54.*]

2. COURTS (§ 198*)—PROBATE COURTS—JURISDICTION—STATUTES.

Probate Act Wash. Jan. 16, 1863 (Laws 1862–63, p. 198, etc.) §§ 3, 4, 5, and 10, and sections 317, 318, conferring jurisdiction on probate courts and providing for the partition and distribution of estates in probate, gave to probate courts of that territory full power and authority within their respective counties of the subject-matter of probate proceedings in the administration of the estates of deceased persons, which jurisdiction carried with it the presumption of the integrity of the judgment, the same as a judgment of a court of general jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 469, 471–475, 478; Dec. Dig. § 198.*]

3. EXECUTORS AND ADMINISTRATORS (§ 315*)—ESTATES—PARTITION AND DISTRIBUTION—JURISDICTION OF PARTIES.

Probate Act Wash. (Laws 1862–63, p. 255, c. 16), relating to the partition and distribution of estates in probate, provides in section 319 that the decree of distribution may be made on application of the executor or administrator or of any person interested in the estate, and shall only be made after notice in the manner required with reference to the application for the sale of land by an executor or administrator in regard to which section 219 declares that notice shall be personally served on all persons interested in the estate, at least ten days before the time appointed for hearing the petition, or be published at least four successive weeks in such newspaper as the court shall order. Held, that where an intestate's estate in process of administration was held for distribution, and the record showed that a notice of hearing was published for four successive weeks in accordance with an order of the court, and that on the date specified in the notice a final decree of distribution was entered, the court had jurisdiction over all persons interested in the estate, whether they were present or represented or not, and the decree became conclusive on all persons so interested subject only to be reversed, set aside, or modified on appeal.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1298–1314; Dec. Dig. § 315.*]

4. STATUTES (§ 56*)—TERRITORIES—ESCHEAT—PROPERTY OWNER DYING WITHOUT HEIRS—DISTRIBUTION TO COUNTY.

Congress never having passed an act providing for the escheat of estates and Wash. Territorial Probate Act Jan. 16, 1863 (Laws 1862–63, p. 261) § 340, providing that property of an intestate dying without kindred shall be escheated to the county in which the estate is situated, and shall be so distributed by the probate court, not having been disapproved by Congress on being submitted to it as required by Act Cong. March 2,

1853, c. 90, § 6, 10 Stat. 175, establishing a territorial government for Washington, such act was valid, and conferred authority on the probate court to distribute property of a citizen dying without heirs to the county in which it was located.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 18; Dec. Dig. § 56.*]

**5. STATUTES (§ 55*)—TERRITORIES—ESCHEAT—STATUTORY PROVISIONS—VALIDITY.**

Probate Act Wash. Jan. 16, 1863 (Laws 1862-63, p. 261) § 340, providing for the distribution of escheated land to the county in which it is located, was not in violation of Territorial Government Act March 2, 1853, c. 90, 10 Stat. 172, providing that no laws shall be passed interfering with the primary disposal of the soil, since such restriction was limited to the disposition of the public domain of the United States, and had no application to laws relating to the disposition of land which had been segregated and disposed of by patent by the United States.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 55.*]

**6. ESCHEAT (§ 2*)—STATUTES—REPEAL.**

Sess. Laws Wash. 1854, p. 218, § 480, providing that whenever any property should be escheated to the territory for its use the legal title should be deemed to be in the territory from the time of escheat, and an information may be filed by the prosecuting attorney in the district court for the recovery of the property and like proceedings, and judgment should be had as in a civil action therefor, was repealed so far as the requirement of recovery by a civil action was concerned by its re-enactment as a part of Act Jan. 28, 1863 (Laws 1862-63, p. 192) § 519, after which escheated property of an intestate was subject to disposal by the probate court distributing the intestate's estate.

[Ed. Note.—For other cases, see Escheat, Cent. Dig. § 2; Dec. Dig. § 2.*]

**7. LIMITATION OF ACTIONS (§ 19*)—RECOVERY OF ESCHEATED PROPERTY.**

Civil Practice Act Wash. 1863, § 17 (Laws 1862-63, p. 86), provided that actions for the recovery of real property should be barred unless the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the premises within 20 years before the commencement of the action. By Code Wash. 1881, § 26, the limitation was reduced to ten years. *Held*, that where, in the administration of an intestate's estate, real estate belonging to him was escheated to the county in which it was located for want of heirs on May 26, 1869, the fact that the intestate had changed his name, and that his heirs had not learned of his death until within three years prior to suit brought to recover the land in April, 1911, did not relieve them from the bar of the statute so as to enable them to recover the land in ejectment.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 73-85; Dec. Dig. § 19.*]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Frank H. Rudkin, Judge.

Ejectment by Thomas Christianson against the County of King to recover possession of certain real property, and to quiet title to the same. Judgment for defendant (196 Fed. 791), and plaintiff brings error. Affirmed.

The complainant is a subject of the kingdom of Norway. The defendant is a municipal corporation organized under the laws of the state of Washington. The action is in ejectment. The complainant claims to be one of the heirs, and the grantee of all the other heirs, of one Lars Torgerson Grotnes, who died in King county, in the then territory of Washington, in March, 1865.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The decedent left an estate which included the land described in the complaint. The estate was administered in the probate court, and, no heirs appearing to claim the estate, it was, by a final decree of distribution, entered in the probate court, escheated to the county of King, in the then territory of Washington.

The land in controversy is within the limits of the city of Seattle, in the present state, and former territory, of Washington. The original tract contained 160 acres. The defendant obtained control of the land in 1869, under claim of title of an escheated estate. The defendant is using a portion of the tract in connection with its county hospital. Another portion is used as a poor farm. Another portion, described as the King county addition to Seattle, has been subdivided and a large part sold in lots. Another portion, described as the King county second addition to Seattle, has been subdivided, and a considerable part of that addition has been sold in lots. The original tract is traversed by many highways and railroad rights of way.

The plaintiff disclaims any purpose of disturbing the public, or the railroad, in the easements acquired in the property, or persons holding lands as innocent purchasers from the defendant. The purpose of the action, as declared by the plaintiff, is to recover the land occupied by the King County Hospital, the King County Farm, and such lands as remain unsold in the King county additions to Seattle. The plaintiff also concedes that the defendant may retain the buildings placed by it upon the hospital grounds.

It appears from the amended complaint that Lars Torgerson Grotnes was born in the city of Porsgrund, in the kingdom of Norway, on the 30th day of August, 1829; that at the age of about 21 years he shipped as a sailor from his native city, and went by way of England to Australia, and thence in the year 1856 to the city of San Francisco, in the state of California; that while in the harbor of San Francisco Grotnes deserted the ship on which he was employed, and changed his name from Lars Torgerson Grotnes to John Thompson, in order to conceal his identity and avoid apprehension. He then went to the neighborhood of Elliott Bay, in King county, in the then territory of Washington, and resided in King county and in Kitsap county in that territory until the time of his death in March, 1865; that he acquired title to the land described in the amended complaint under the name of John Thompson.

In the amended complaint the proceedings in the probate court of King county, territory of Washington, are set forth, from which it appears that on the 26th day of March, 1865, one Daniel Bagley was appointed administrator of the estate of John Thompson by the probate court of the county of King, in the territory of Washington, and on the 26th day of May, 1868, the county commissioners of King county presented to the probate court a petition averring that they were informed that Thompson's administrator had a large sum of money in his hands; that no heirs had appeared to claim the same; that they believed no heirs were known to exist; that King county was entitled to the balance in the administrator's hands, and praying for an order requiring the administrator to account and pay the balance in his hands to the treasurer of said King county. A citation was thereupon issued by said probate court, reciting the contents of said petition, and commanding the administrator to show cause why the order asked for should not be entered. This citation was served upon the administrator on May 27, 1868, and thereafter, on February 12, 1869, the administrator petitioned the court for a disposition of the estate. In pursuance of this petition the court directed the publication of a notice of a hearing upon such petition for four successive weeks in a newspaper published in King county. The notice was published as directed, and a hearing had upon the petition, and thereafter a final decree was entered distributing the residue of the "estate to the county of King, in Washington Territory."

The complaint avers that this decree was null and void; that the said probate court was wholly without jurisdiction to in any manner vest, transfer, convey, fix, or pass upon the title to the land described in said decree, and had no power or authority to declare said land escheated; that all claims to said land by the defendant, and all acts done by the defendant in reference to said land, and all control exercised or attempted to be ex-

ercised by the defendant over said land, had been made, done, performed, and exercised under and by virtue of said null and void decree; that the defendant had not, and never had had, any contract, deed, conveyance, decree, judgment, nor other writing, record, or document evidencing, or purporting to evidence, any title on its part in or to said land; that the defendant had never at any time begun or instituted any suit or legal proceeding of any nature before any court, officer, or tribunal for the purpose of having an escheat of said land adjudicated, adjudged, or declared, nor had any other authority or officer ever begun or instituted any such suit or legal proceeding; that the defendant had never at any time begun or instituted any suit or legal proceeding of any nature before any court, officer, or tribunal for the purpose of having any title, or claim of title, which it had or might have in said land, established, approved, confirmed, or quieted, nor had any other public authority or officer ever begun or instituted any such suit or legal proceeding.

The complaint further avers that, after the entry of said decree, the land described therein was marked upon the assessor's roll as county property, and as exempt from taxation, and had ever since been so treated, except certain portions thereof which the defendant had assumed to convey to private parties by deed: that about the year 1885 the county of King, in the then territory of Washington, occupied a certain portion of the tract of land described in said complaint, which said portion remained in its occupancy, and after the organization of the state of Washington had remained in the control of the defendant, and was generally known as the "King County Farm"; that this tract of land had never been used for any county purposes, but had been let out to tenants for the purpose of being farmed and producing a monetary income for the county; that about the year 1900 the defendant occupied a portion of the tract, which portion was known as the "King County Hospital Grounds"; that the defendant had placed upon the last-mentioned tract of land valuable improvements in the shape of a hospital building and its appurtenances, the exact value of which was to the plaintiff unknown, and since thus occupying the same had been and was then using it for county hospital purposes; that in the year 1892 the defendant assumed to make a plat of a certain portion of the tract, called "King county addition to the city of Seattle," and caused the said plat to be recorded in the office of the auditor of King county; that the defendant had assumed to sell and convey to private parties all of the land composing said addition, except certain portions which were specially described in the complaint; that in the year 1903 the defendant had assumed to make a plat of a certain portion of the tract, called "King county second addition to the city of Seattle," and caused said plat to be recorded in the office of the auditor of said King county; that the defendant had assumed to sell and convey to private parties all of the land composing said last-named addition, except certain portions, which were particularly described in the complaint; that the tracts of land described as the "King County Farm," "King County Hospital Grounds," "King county addition to the city of Seattle," and "King county second addition to the city of Seattle," together comprise the whole of the tract described in said complaint as being the property belonging to Lars Torgerson Grotnes, except certain portions which had been appropriated for public or quasi public purposes, for railroad rights of way or highways.

The complaint further avers that the plaintiff is a son of the sister of Lars Torgerson Grotnes, and one of his heirs at law; that all of the other now living heirs at law of said Lars Torgerson Grotnes had by proper mesne conveyances conveyed their right, title, and interest in and to the land described in the complaint to the plaintiff, who was then the sole owner in fee thereof.

It is further averred that the heirs at law of Lars Torgerson Grotnes had no knowledge of what had become of him, and did not learn about his death and the place in which he died, nor of the fictitious name which he had assumed, until within three years last past; that since learning thereof such heirs, and particularly the plaintiff, have been diligently engaged in searching for and procuring the proper proofs of the identity of Lars Torgerson Grotnes and John Thompson, and his relationship to them.

203 F.—57

To the amended complaint the defendant interposed a demurrer, on the ground, among others, that the complaint did not state facts sufficient to constitute a cause of action, and that the action had not been commenced within the time limited by law.

The trial court sustained the demurrer, and thereupon dismissed the cause of action.

Edward Judd, S. S. Langland, and W. A. Keene, all of Seattle, Wash., for plaintiff in error.

John F. Murphy and Robert H. Evans, both of Seattle, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The main question to be determined is the jurisdiction of the probate court of King county at the time it entered the decree escheating the estate of John Thompson in favor of the defendant. Had the court jurisdiction to enter that decree?

[1] The territory of Washington was established by the act of Congress approved March 2, 1853, c. 90 (10 Stat. 172). The act provided for the exercise of executive, legislative, and judicial power and authority in the territory.

By section 4 of the act it was provided:

"That the legislative power and authority of said territory shall be vested in a legislative assembly, which shall consist of a Council and House of Representatives."

By section 6 it was provided:

"That the legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States. But no law shall be passed interfering with the primary disposal of the soil. * * * All the laws passed by the legislative assembly shall be submitted to the Congress of the United States, and, if disapproved, shall be null and of no effect."

The act provides a number of restrictions upon the legislative authority of the assembly. But no restriction is placed upon the legislative authority in conferring jurisdiction upon the courts established by the act.

By section 9 it was provided:

"That the judicial power of said territory shall be vested in a Supreme Court, district courts, probate courts, and in justices of the peace. * * * The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of justices of the peace, shall be as limited by law."

Under this statute, it was perfectly competent for the legislative assembly to establish probate courts, and confer upon them full power and authority in all probate proceedings. And this appears to have been done originally by the act of April 14, 1854 (Laws of Washington, Session Acts 1854–1862, p. 315), and subsequently by the more elaborate statute entitled, "The Probate Act," passed January 16, 1863 (Laws of Washington 1862–63, p. 198, etc.). This last act was in force at the time of the death of Thompson (Grotnes), in March, 1865,

and during the probate proceedings relating to his estate, from March 26, 1865, to the final decree of distribution on May 26, 1869.

[2] Chapter 1 related to the probate court, its powers and jurisdiction. It was provided by section 3 of that chapter:

"That said probate courts shall have and possess the following powers: Exclusive original jurisdiction within their respective counties in all cases relative to the probate of last wills and testaments; the granting of letters testamentary and of administration, and revoking the same; * * * in the settlement and allowance of accounts of executors, administrators and guardians; * * * to allow or reject claims against estates of deceased persons as hereinafter provided; to award process and cause to come before said court all and every person or persons whom they may deem it necessary to examine, whether parties or witnesses, or who, as executors, administrators or guardians, or otherwise, shall be intrusted with or in any way be accountable for any lands, tenements, goods or chattels, belonging to any * * * estate of any deceased person, with full power to administer oaths and affirmations, and examine any person touching any matter of controversy before said court, or in the exercise of its jurisdiction. * * * *"

Section 4 provided:

"The said court shall provide and keep a suitable seal."

Section 5 provided:

"That the court established by this act shall be a court of record, and shall keep just and faithful records of its proceedings, and shall have power to issue any and all writs which may be necessary to the exercise of its jurisdiction."

Section 10 provided:

"That all process issuing out of the probate court, shall be attested by the clerk, and sealed with the seal of the court, and shall be served in the same manner as process issuing out of the district court."

Chapter 16 of the act related to partition and distribution of estates in probate. Section 317 of that chapter provided:

"Upon the settlement of the accounts of the executor or administrator, or at any subsequent time, upon the application of the executor or administrator, or any heir, devisee or legatee, the court shall proceed to distribute the residue of the estate, if any, among the persons who are by law entitled."

Section 318 provided:

"In the decree the court shall name the person and the portion, or parts to which each shall be entitled; and such persons shall have the right to demand and recover their respective shares from the executor or administrator, or any person having the same in possession."

These provisions of the statute gave the probate courts full power and authority within their respective counties of the subject-matter of probate proceedings in the administration of the estates of deceased persons; and this jurisdiction carried with it the presumption of the integrity of the judgment, the same as does the judgment of a court of general jurisdiction. Magee v. Big Bend Land Co., 51 Wash. 406, 410, 99 Pac. 16, 18. "In so far as probate courts have general jurisdiction, their records need not affirmatively show the existence of facts upon which the exercise of their jurisdiction depends. And the rule applies even though the court is one of limited jurisdiction, where it is invested with full authority over probate and testamentary matters

and is a court of record." 11 Cyc. p. 697. In this case it appears affirmatively from the record that the proceedings were in substance in conformity with the statute, and in our opinion gave the court jurisdiction of the subject-matter.

[3] The next question is, Did the statute further provide a method of procedure whereby the court would obtain jurisdiction over all parties interested in such estates? Section 319 provides:

"The decree may be made on the application of the executor or administrator, or of any person interested in the estate, and shall only be made after notice has been given in the manner required in regard to the application for the sale of land by an executor or administrator."

The notice required to be given upon an application by the executor or administrator for the sale of land was provided in section 219 of the act as follows: The order to show cause why an order should not be granted to the executor or administrator for the sale of real estate was required to be "personally served on all persons interested in the estate at least ten days before the time appointed for hearing the petition, or be published at least four successive weeks in such newspaper as the court should order."

It appears from the record that the notice was by order of the court published in a newspaper in King county for four successive weeks, and that the hearing upon said notice was fixed for the 26th day of April, 1869, and such proceedings were thereupon had that a final decree of distribution was entered in said estate on the 26th day of May, 1869. This decree recited, among other things, that the administrator had on the 12th day of February, 1869, petitioned for an order settling and allowing his final account, that a time had been fixed for hearing the application for a decree of distribution, and that due and legal notice of such hearing had been given.

It is averred that the decree of distribution recited:

"That said administrator has fully accounted for all the estate that has come to his hands, and that the whole estate, so far as it has been discovered, has been fully administered, and the residue thereof, consisting of the property hereinafter particularly described, is now ready for distribution. That all the debts of said decedent and of said estate, and all the expenses of the administration thereof thus far incurred, and all taxes that have attached to or accrued against the said estate, have been paid and discharged, and said estate is now in a condition to be closed; that said decedent died intestate in the county of King, Washington Territory, on the ——— day of March, A. D. 1865, leaving no heirs, surviving him; * * * there being no heirs of said decedent, that the entire estate escheat to the county of King, in Washington Territory.' Now, on this 26th day of May, A. D. 1869, on motion of said Daniel Bagley, administrator of said estate, and no exceptions or objections being filed or made by any person interested in the said estate or otherwise, it is hereby ordered, adjudged, and decreed that all the acts and proceedings of said administrator, as reported by this court and as appearing upon the records thereof, be and the same are hereby approved and confirmed, and that, after deducting said estimated expenses of closing the administration, the residue of said estate of John Thompson, deceased, not heretofore distributed, hereinafter particularly described, and now remaining in the hands of said administrator, and any other property not now known or discovered which may belong to the said estate, or in which the said estate may have any interest, be and the same is hereby distributed as follows, to wit: The entire estate to the county of King, in Washington Territory."

Then follows a particular description of the residue of the estate referred to in the decree.

Proceedings in probate being essentially in rem, a statute providing for a constructive notice by publication gives notice to the whole world.

As said by the Supreme Court of California in William Hill Co. v. Lawler, 116 Cal. 359, 362, 48 Pac. 323:

"A proceeding for distribution is in the nature of a proceeding in rem, the res being the estate which is in the hands of the executor under the control of the court and which he brings before the court for the purpose of receiving directions as to its final disposition. By giving the notice directed by the statute the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate, and any person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appear and present his claim, or fail to appear, the action of the court is equally conclusive upon him, 'subject only to be reversed, set aside, or modified on appeal.' The decree is as binding upon him if he fail to appear and present his claim as if his claim after presentation had been disallowed by the court."

In the case of Broderick's Will, 88 U. S. (21 Wall.) 503, 22 L. Ed. 599, persons claiming to be the heirs of Senator Broderick sought by a suit in equity to avoid the sale of certain property of the estate in the probate proceedings upon substantially the same grounds as in the present case. The probate proceedings were upheld, and the court, referring to the probate proceedings, said:

"The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership, and consequently that there should be some convenient jurisdiction and mode of proceeding by which the devolution may be effected with least chance of injustice and fraud, and that the result obtained should be firm and perpetual."

In Goodrich v. Ferris, 214 U. S. 71, 80, 29 Sup. Ct. 580, 583 (53 L. Ed. 914), Id. (C. C.) 145 Fed. 844, the action was to set aside a final decree of distribution of an estate in probate in the state court on the ground that the notice of the hearing given under the statute did not as to the complainant amount to due process of law. The bill was dismissed in the lower court, and on appeal to the Supreme Court the judgment of dismissal was affirmed. The Supreme Court said:

"It is elementary that probate proceedings by which jurisdiction of a probate court is asserted over the estate of a decedent for the purpose of administering the same is in the nature of a proceeding in rem, and is therefore one as to which all the world is charged with notice."

In our opinion the proceedings under the statute were sufficient to give the court jurisdiction over all parties claiming interest in the estate.

The next question is, Did the probate court have authority to distribute the residue of the estate to King county by a judgment of escheat?

[4] Section 340 provides:

"When any person shall die seized of any lands, tenements or hereditaments, or any right thereto, or entitled to any interest therein, in fee simple, or for

the life of another, not having lawfully devised the same, they shall descend, subject to his debts, as follows: * * * If the intestate shall leave no kindred, his estate shall escheat to the county in which such estate may be situate."

The plaintiff contends that the probate court had no power or authority to distribute the estate of the deceased to King county; that during the territorial period the United States was the sovereign, and to this sovereign alone could an estate be distributed by a judgment of escheat.

Admitting the sovereignty of the United States in the territory, and that the residue of an unclaimed estate in such territory is primarily vested in that sovereignty, it does not follow that the United States cannot divest itself of its right of escheat and place it elsewhere. Congress has never passed an act providing for escheating of estates, but has always left the matter with the territory during the territorial period, and with the states after the states have been formed. Crane v. Reeder, 21 Mich. 24, 75, 4 Am. Rep. 430. The validity of the Washington statute was recognized by the Supreme Court of the state in Territory v. Klee, 1 Wash. 183, 187, 23 Pac. 417, and by this court in Pacific Bank v. Hannah, 90 Fed. 72, 32 C. C. A. 522.

By section 6 of the act of March 2, 1853 (10 Stat. 172), establishing the territorial government of Washington, it was provided that the legislative power of the territory should extend to all rightful subjects of legislation, not inconsistent with the Constitution and laws of the United States. Territorial legislation providing for escheating of unclaimed estates in the territory was not inconsistent with the Constitution and laws of the United States.

[5] The contention that it was inconsistent with the prohibition of the statute, "that no law shall be passed interfering with the primary disposal of the soil," is not applicable to this case, and cannot be sustained as an objection to the decree. That restriction was intended by Congress to prohibit the territorial legislation from passing a law interfering with the authority of Congress to direct the manner in which the public domain of the United States should be disposed of to those settling upon it, or claiming it under the public land laws of the United States. The land involved in this case was originally part of the public domain, but it had been segregated and disposed of by the United States and conveyed to a grantee by patent. The deceased held that title at the time of his death derived by mesne conveyance from the original grantee. The judgment of escheat had, therefore, nothing whatever to do with the primary disposal of this land. Furthermore, it was provided in the act of Congress that all laws passed by the legislative assembly should be submitted to the Congress of the United States, and, if disapproved, should be null and of no effect. It will be presumed, in the absence of evidence to the contrary, that the laws passed by the legislative assembly, including the probate act, were submitted to the Congress of the United States, and were not disapproved, and that the provision providing for the escheating of unclaimed estates to the counties in which such estates were situate was in effect approved as a rightful exercise of the legislative power of the territory.

[6] In the act of the territorial Legislature regulating the practice and proceedings in civil actions, approved April 28, 1854, it was provided in section 480 (Session Laws of Washington, p. 218) that:

"Whenever any property shall escheat or be forfeited to the territory for its use, the legal title shall be deemed to be in the territory from the time of escheat or forfeiture, and an information may be filed by the prosecuting attorney in the district court for the recovery of the property, alleging the ground on which the recovery is claimed, and like proceedings and judgment shall be had as in a civil action for the recovery of property."

It is contended that an escheat could only be decreed under this statute by a common-law action in the district court for the recovery of property, but in the Civil Practice Act of January 28, 1863, § 519 (Laws 1862–63, page 192), section 480 of the act of 1854 was re-enacted with respect to the forfeiture of property, and the provision relating to civil actions for the recovery of escheated property was omitted. It was further provided in section 547 of the act of 1863 that:

"All acts or parts of acts heretofore enacted upon any subject-matter contained in this act be, and the same are hereby, repealed."

This action of the Legislature not only disposes of the contention that a civil action was required to secure a judgment of escheat in this case, but it confirms the jurisdiction of the probate court under the Probate Act of January 16, 1863, to enter such a judgment.

[7] We are of the opinion also that the statute of limitations is an effectual bar to this action. It was provided in section 17 of the Civil Practice Act of 1863 (Laws Wash. 1862–63, p. 86) that the period for the commencement of civil actions should be as follows: Within 20 years:

"First. Actions for the recovery of real property, or for the recovery of the possession thereof, and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question, within twenty years before the commencement of the action."

By section 26 of the act to regulate the practice and proceedings in civil actions, approved December 7, 1881 (Code of Washington 1881, p. 39), the period of limitation was reduced to 10 years. The judgment of escheat was entered in this case on May 26, 1869. This action was commenced by the plaintiff on April 24, 1911, or nearly 42 years after the entry of the judgment. The allegations of the complaint as to certain acts of the defendant with respect to occupancy of the premises in controversy are not sufficient to stay the running of the statute of limitations, nor was the statute stayed by the allegation that neither the heirs of the decedent, nor the plaintiff, learned of the death of Grotnes, the place of his death, and the fictitious name which he had assumed until within three years last past, and that since learning thereof the heirs, and particularly the plaintiff, had been diligently engaged in searching for and procuring the proper proof of the identity of Lars Torgerson Grotnes and John Thompson, and his relationship to them.

In the case of Broderick's Will, supra, it was alleged in the complaint that complainants had no knowledge or information of Brod-

erick's death, nor of the forgery of the will, nor of its presentation for probate, nor of the probate or order of sale, nor of any of the proceedings, until the last day of December, 1866, within three years of filing the bill, and that since that time they had been diligently endeavoring to discover the facts and the evidence relating thereto. It was provided by the statute of limitations of the state of California that actions for relief on the ground of fraud could only be commenced within three years. The Supreme Court, commenting upon this statute, said:

"It is true that it is added that the cause of action in such case is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. But that is only the application to cases at law of a principle which has always been acted upon in courts of equity. If fraud is kept concealed so as not to come to the knowledge of the party injured, those courts will not charge him with laches or negligence in the vindication of his rights until after he has discovered the facts constituting the fraud. And this is most just. But that principle cannot avail the complainants in this case. By their own showing their delay was due, not to ignorance of the fraud, nor any attempt to conceal it, but to ignorance of Broderick's death, and all the open and public facts of the case. * * * They do not pretend that the facts of the case were shrouded in concealment, but their plea is that they lived in a remote and secluded region, far from means of information, and never heard of Broderick's death, or of the sale of his property, or of any events connected with the settlement of his estate, until many years after these events had transpired. Parties cannot thus, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings in rem."

If a court of equity could not afford relief against the running of the statute of limitations in the case of Broderick's heirs, it is plain that a court of law could not in a suit of ejectment afford relief against the running of a similar statute in the present case.

The judgment of the court below is affirmed.