## LATTA et al. v. WESTERN INV. CO. et al.
### No. 11990.

United States Court of Appeals
Ninth Circuit.
Feb. 25, 1949.

Busick & Busick, of Sacramento, Cal., Charles H. Seccombe, of Oakland, Cal., and S. J. Bennett, of Durham, N. C., for appellants.

Royal E. Handlos, Edward D. Landels and Landels & Weigel, all of San Francisco, Cal., Driver, Driver & Driver and J. Francis O'Shea, all of Sacramento, Cal., T. L. Chamberlain, of Auburn, Cal., Devlin & Devlin & Diepenbrock, of Sacramento, Calif., and R. S. Myers and E. J. Foulds, both of San Francisco, Cal., for appellees.

Before DENMAN, Chief Judge, ORR, Circuit Judge, and HARRISON, District Judge.

HARRISON, District Judge.

This is an appeal from a judgment arising over the granting of a motion to dismiss a complaint for declaratory and other relief, wherein plaintiffs seek to declare void a decree of distribution in the Mark Hopkins Estate, granted in 1883, or in the alternative a declaration that the decree failed to distribute the entire estate.

The complaint and amendments thereto in substance allege that Mark Hopkins died on March 29, 1878, and at the time of his death was a resident of the City and County of San Francisco, State of California, and left estate therein. That at the time of his death his sole heirs were eight brothers and sisters, all of whom lived in the State of North Carolina, except one brother, Moses Hopkins, a resident of California; that on June 3, 1878, letters of administration were issued to Mary Frances Sherwood Hopkins, under the representations she was the surviving wife of Mark Hopkins, deceased, when as a matter of fact she was not his wife but his housekeeper. Later on Moses Hopkins, a brother of the decedent, was substituted as administrator and continued to act as such until a decree of final distribution was granted on or about November 1, 1883. In said decree the estate was ordered distributed to the alleged widow and the brother, Moses. Thereafter, certified copies of the decree of distribution were recorded in the various counties of the state where there was real property affected thereby. The fire of 1906 destroyed all the original records of the probate proceedings.

Plaintiffs further allege that during the administration of the estate, the administratrix and administrator concealed from the court properties worth many millions of dollars; that property has never been distributed but converted to the use of the administratrix and administrator; that Moses Hopkins failed to notify his brothers and sisters of the death of Mark Hopkins and when inquiry was made in the early eighteen eighties, they were advised that Mark Hopkins had left a widow and children; that the fraud perpetrated upon the plaintiffs' ancestors was not discovered until 1945.

The plaintiffs allege that they are descendants of the brothers and sisters of Mark Hopkins and bring this action in their own behalf, as well as in behalf of all other heirs similarly related, the names of whom are attached to the complaint as an exhibit, numbering about two hundred. Jurisdiction is based upon diversity of citizenship.

Plaintiffs also aver that in 1947, the Superior Court of the City and County of San Francisco denied an application for the appointment of an administrator de bonis non.

The prayer of the complaint in substance seeks a declaration that the decree of distribution is void, or in the alternative, the

decree did not distribute the properties described in the complaint and that the same remain vested in the heirs of Mark Hopkins, deceased, subject to administration. Also that the court determine heirship and direct the Superior Court to appoint an administrator de bonis non.

The defendants in the action deraign title through deeds executed by Samuel F. Hopkins, Moses Hopkins and Mary Frances Sherwood Hopkins during the administration of said estate.

Plaintiffs contend that the appointments of the administratrix and administrator were void for failure to set forth the names of the heirs in the petition for letters of administration, and for failure to mail notice of hearing on said petitions.

It is further contended that the decree of distribution is void because Moses Hopkins in 1845, in North Carolina, was convicted of an infamous crime, thereby, under the California law rendered ineligible to act in the capacity of administrator.

Plaintiffs assert that the omnibus clause "not now known or discovered" in the decree of distribution did not distribute the assets of the estate not therein described, which assets were known to the administrator and which it is alleged he had concealed fraudulently.

█ Appellees moved for a dismissal of the complaint upon the ground that the causes of action are barred by the statute of limitations; and that the claims are stale and the plaintiffs and their ancestors are guilty of laches, together with other grounds unnecessary to set forth. The motion was supported by affidavits setting forth principally copies of court records of previous proceedings of the appellants and their ancestors concerning the estate of Mark Hopkins, deceased. The motion became what is known as a "speaking demurrer" and it is immaterial whether it is designated as a motion to dismiss or for summary judgment. Courts have recog-

nized this expeditious method of disposing of litigation since the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A.[1]

█ Appellants were granted time to file affidavits in opposition to motions to dismiss and thereupon filed the affidavit of Jones M. Griffin, a seventy-five year old nephew of Mark Hopkins. This affidavit is most revealing in that it negatives the allegation of discovery in the year 1945. It places the time at 1925. In the affidavit he states: "affiant and other heirs of Mark Hopkins in North Carolina first learned that Mark Hopkins died intestate and left no wife and children and left an estate". The affidavit then proceeds to relate the efforts to uncover the details of the alleged fraud set forth in the complaint. Appellants at no time place in issue the facts recited in the affidavit of Royal E. Handlos.

The record discloses no objection upon the part of the appellants to this procedure. On appeal, however, they assign it as an error and cite numerous authorities decided before the adoption of the Federal Rules of Civil Procedure. It is their contention that the procedure was unauthorized until the adoption of the new amendment to Rule 12. If the authorities heretofore cited are not sufficient to establish the appropriateness of the procedure followed in this case, the recent decision of the Supreme Court of the United States in Klapprott v. United States, 1949, 335 U.S. 601, 69 St.Ct. 384, 387, should suffice. In that case the court in discussing Rule 60-(b), through Mr. Justice Black stated:

"* * * For these reasons the Government contends that amended Rule 60(b) should not be applied here. In some respects, the amended rule grants courts a broader power to set aside judgments than did the old rule. Petitioner should be afforded the benefit of the more liberal amended 60(b). For Rule 86(b) made amended 60(b) applicable to 'further proceedings in actions then pending' unless it 'would work injustice' so to apply the rule."

[1] Samara v. United States, 2 Cir., 129 F.2d 594, 597, certiorari denied 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549; Boro Hall Corporation v. General Motors Corporation, 2 Cir., 124 F.2d 822, 823, certiorari denied 317 U.S. 695, 63 S.Ct. 436, 87 L.Ed. 556; Carroll v. Morrison Hotel Corp., 7 Cir., 149 F.2d 404, 407; National War Labor Board v. Montgomery Ward & Co., 79 U.S.App.D.C. 200, 144 F. 2d 528, 531; Victory v. Manning, 3 Cir., 128 F.2d 415, 416, 417; Gallup v. Caldwell, 3 Cir., 120 F.2d 90, 92, 93.

Such proceedings worked no injustice upon the appellants, rather it was in the furtherance of expeditious justice.

■ Among the records referred to in the Handlos affidavit are the records of this court in Freeman v. Hopkins et al., hereinafter referred to as the Freeman case, the decision of which is found in 9 Cir., 32 F. 2d 756, certiorari denied, 280 U.S. 575, 50 S.Ct. 30, 74 L.Ed. 626. Without affidavits we may take judicial notice of the records and files of this court.[2] These records reveal that Freeman for himself and about four hundred and fifty descendants of the alleged heirs of Mark Hopkins brought an action seeking to recover for said descendants, personal property of the value of several million dollars, which allegedly was concealed fraudulently by Moses Hopkins, the administrator, and was not distributed under the decree of distribution. It will be noted in the Freeman action no attempt was made to invalidate the decree of distribution. Its attempted recovery was limited to personal property only. The District Court dismissed said action because of laches and for want of equity. The Circuit Court affirmed said judgment.

We have concluded that the decree of distribution is valid and it distributes the entire estate. We are further of the opinion that the claims of the plaintiffs are stale and are barred by laches as well as the statute of limitations. In view of our conclusions it is unnecessary to discuss numerous other points raised by the parties.

The Decree of Distribution Is Valid

Appellants claim that the decree of distribution is void for the following reasons:

1. That the petition for letters of administration fraudulently failed to set forth the names of the heirs of Mark Hopkins, deceased.

2. That notice of hearing on said petition for letters of administration and of distribution were not mailed to all the heirs.

3. That Moses Hopkins in 1845 had been convicted of an infamous crime and was by reason thereof ineligible to qualify as administrator.

■ While the code then in effect required that the heirs be listed, it specifically provided however that a failure in this respect did not void the proceedings and numerous California cases so hold.[3]

■ Probate proceedings are proceedings in rem and jurisdiction is acquired by giving notice of hearings required by law. At the time of the probate proceedings involved herein, the only notice required was the posting of notice in three public places in the county wherein the proceedings were pending.[4] This was constructive notice to the world and all interested parties were bound thereby.[5] Thus the ancestors of appellants had constructive notice of all probate proceedings and cannot complain now because they did not have actual notice.[6] "The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings in rem."[7]

• [8] The decree of distribution recites that due notice of the hearing upon the

[2] Freshman v. Atkins, 5 Cir., 294 F. 867, 868, 869, Id., 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193; Booth v. Fletcher, 69 App.D.C. 351, 101 F.2d 676, 679, certiorari denied, Fletcher v. Booth, 307 U. S. 628, 59 S.Ct. 835, 83 L.Ed. 1511; Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 88 F.2d 407, 411; Suren v. Oceanic S.S. Co., 9 Cir., 85 F.2d 324, 325, certiorari denied 300 U.S. 653, 57 S.Ct. 430, 81 L.Ed. 863; Perlman v. 322 West Seventy-Second Street Co., 2 Cir., 127 F.2d 716, 717; A. G. Reeves Steel Const. Co. v. Weiss, 6 Cir., 119 F.2d 472, 474, certiorari denied 314 U.S. 677, 62 S.Ct. 181, 86 L.Ed. 541; United States v. Pink, 315 U.S. 203, 216, 62 S.Ct. 552, 86 L.Ed. 796.

[3] Security First Nat. Bank v. Superior Court, 1 Cal.2d 749, 755, 756, 37 P.2d 69; Murray v. Superior Court, 207 Cal. 381, 385, 278 P. 1033; Nicholson v. Leatham, 28 Cal.App. 597, 602, 153 P. 965, 155 P. 98; Cal. Code of Civil Procedure (1876), § 1371.

[4] Cal. Code of Civil Procedure (1876), § 1373.

[5] See footnote 3; Christianson v. King County, 9 Cir., 203 F. 894, 901.

[6] Christianson v. King County, 9 Cir., 203 F. 894, 904, Id., 239 U.S. 356, 373, 36 S.Ct. 114, 60 L.Ed. 327.

[7] In re Broderick's Will (Kiegley v. McGlynn), 21 Wall. 503, 22 L.Ed. 599, 605.

final account and petition and for final distribution "in the manner and for the time heretofore ordered and directed by the Court", had been given. That due notice was given is presumed, in the absence of affirmative evidence to the contrary.[8]

The allegation that Moses Hopkins was convicted of an infamous crime in North Carolina in 1845 is the final basis for the claim that the proceedings were invalid, because the code specifically provided that such a person was ineligible to act as administrator. In other words, it is the contention of the appellants that over one hundred years ago Moses Hopkins was convicted of grand larceny, thirty-eight years thereafter he was appointed administrator, and now at this late date such decree can be declared void. If such were the rule of law, no link in a chain of title dependent upon a probate proceeding could or would be relied upon, thereby rendering virtually all titles subject to attack whenever some dissatisfied person feels inclined to expose his family skeleton to the world.

The pleadings recognize the appointment of Moses Hopkins as administrator. Upon his appointment the letters of administration issued to him became conclusive evidence of his qualification and authority to act and the regularity of the proceedings leading up to his appointment. They may be attacked only in direct proceedings and not collaterally.[9] Counsel for appellants recognize that they are attempting to impose the minority rule in citing 14 A.L.R. 622, and failing to cite one California case to support their position, when numerous California cases have held to the contrary.

The Decree Distributed The Entire Estate

The decree of distribution provides in part as follows:

"It is further ordered adjudged and decreed that the said final accounts of the said Administrator be and the same are settled, allowed and approved and that the residue of said Estate hereinafter particularly described and any other property not now known or discovered which may belong to said Estate or in which said Estate may have any interest, be and the same is hereby distributed as follows:

"Three fourths of said Estate to be distributed to the widow of said deceased, Mary Frances Sherwood Hopkins, and one fourth of said Estate to be distributed to the brother of said deceased, Moses Hopkins."

Appellants contend that inasmuch as the concealed property was known to the administrator, the omnibus clause did not convey any property, except that which was described particularly. They have overlooked, however, the clause "or in which said estate may have any interest". It would appear that said omnibus clause was all inclusive. This clause has been adjudicated by the California courts and held to distribute the entire estate of the deceased.[10] It follows closely the form books of that period and the same omnibus clause was a recognized form for a final decree of distribution in California as late as 1901. Ency. of Forms & Precedents, Vol. XIV, p. 955. The law in force in California at the time provided that upon the settlement of the final account, the court must distribute the residue of the estate. § 1665, Cal.Code of Civ.Procedure. The decree clearly shows that it was the intention of the court to make a final distribution of the estate and such intention is recognized unless the contrary appears.

In Humphry v. Protestant Episcopal Church, 154 Cal. 170, 171, 97 P. 187, the decree reads as follows:

8 Clavey v. Loney, 80 Cal.App. 20, 26, 251 P. 232, 234.

9 Cal. Code of Civil Procedure (1876 and 1883), § 1666; Annotations 14 A.L. R. 619; 21 Am.Jur. § 129, pp. 450, 451; 11 R.C.L. § 84, pp. 86, 87; In re Davis' Estate, 151 Cal. 318, 323, 86 P. 183, 90 P. 711, 121 Am.St.Rep. 105; Lane v. Starkey, 59 Cal.App. 140, 142, 210 P. 277; Abrook v. Ellis, 6 Cal.App. 451, 455, 92 P. 396; Jerauld v. Chambers, 44 Cal. App. 771, 773, 187 P. 33; 11a Cal.Jur. §

267, p. 384; Bank of Commerce & Trust Co. v. Humphrey, 41 Cal.App. 552, 555, 183 P. 222; In re Way's Estate, 29 Cal. App.2d 669, 676, 85 P.2d 563; Castillo v. Warren, 44 Cal.App.2d 903, 908, 113 P.2d 232; Luckey v. Superior Court, 209 Cal. 360, 364, 287 P. 450.

10 Smith v. Biscailuz, 83 Cal. 344, 359, 21 P. 15, 23 P. 314; Metzger v. Vestal, 76 Cal.App. 409, 413, 244 P. 942; Victoria Hospital Ass'n v. All Persons, 169 Cal. 455, 458, 147 P. 124.

"* * * 'that the residue of said estate hereinafter particularly described, and any other property not now known or discovered, which may belong to said estate, or in which said estate may have an interest, be and the same is hereby distributed to the said Emily A. Humphry.'"

Plaintiff contended that she obtained title under the above clause, even though this interest had not been described particularly in the petition for distribution. Defendant contended that there was not only failure to distribute this interest to plaintiff, but an intent not to distribute it, and therefore took no title. The court held as follows:

"If the decree of distribution is to be construed according to its language, it certainly, in conforming title to Emily A. Humphry, to 'any other property not now known or discovered' vested her with the title to the disputed undivided one-tenth of lot 11. * * * The res in this case was the residue of the estate, and, notwithstanding the omission of the petition specifically to describe the undivided interest in this lot, that the court intended to distribute the whole residue whether described or undescribed, known or unknown, is made plainly manifest from the language which it employs. Moreover, upon final distribution, it is the duty of the court to distribute all of the residue to the persons entitled (Code Civ.Proc. § 1665), and its order and decree in this regard is conclusive as to the rights of the heirs, legatees, or devisees and those holding under them. Code Civ.Proc. § 1666."

The court having power to distribute the estate, whether it distributed such property in the correct proportions to the distributees could not be subject to a collateral attack. The California Code of Civil Procedure § 1666 at that time provided as follows:

"In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled, and such persons may demand, sue for, and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal."

The real property belonging to said estate was distributed by the court in the following language:

"And it further appearing to this Court, that the said Moses Hopkins and the said Samuel F. Hopkins, did on the thirteenth day of March, A. D. 1880, by deed duly made, executed and delivered convey to Mary Frances Sherwood Hopkins all their right title and interest in and to all the real estate of which the said Mark Hopkins died seized and possessed, situated lying and being within the State of California. It is further ordered adjudged and decreed that the entire amount of said real estate of which the said Mark Hopkins died seized and possessed, and in which the said estate has any right title or interest, be and the same is hereby set aside and distributed to Mary Frances Sherwood Hopkins, widow of said deceased and the said conveyance from Moses Hopkins and Samuel F. Hopkins to Mary Frances Sherwood Hopkins is hereby approved and confirmed. Done in open court this first day of November, A. D. 1883, etc."

This portion of the decree is attacked by appellants in their complaint in the following language:

"* * * That said deed was executed prior to the appointment of Moses Hopkins as administrator of said estate. That at the time of the execution of said deed, said Mary Frances Sherwood-Hopkins was acting as administratrix of said estate under the purported Letters of Administration theretofore issued by said Court; that by virtue of said Letters of Administration said Mary Frances Sherwood-Hopkins occupied a fiduciary relation and a position of trust as between herself and the legal heirs of Mark Hopkins, deceased. That Samuel Hopkins, one of the purported grantors named in said deed, had no interest in said estate and was not an heir of Mark Hopkins."

It is common practice, and approved by the courts of California, that heirs can transfer freely or assign their interest in a pending probate proceeding or specific

property thereof.[11] An administrator does not violate any fiduciary or trust relationship by disposing or acquiring any part of the estate, subject, of course, to administration of the estate. In Phelps v. Grady, 168 Cal. 73, 75, 141 P. 926, 927, certain of the heirs and beneficiaries under a will conveyed their title before distribution to them. The court held that this was permissible stating:

" * * * Title to the real estate of a deceased intestate vests immediately in his heirs of a testate in his devisees. That title they may convey without administration, and this they may do whether they be domestic or foreign heirs or devisees. The heirs of a nonresident intestate leaving real estate in California may convey complete title so far as they are concerned to such real estate without ancillary administration in the state of California. True, the title thus conveyed is not a perfect title, in that the title will always be subject to the right of possession in a local administrator for the payment of the claims of local creditors. But with this defect, the heirs who have deliberately parted with their title are not concerned, and can find no fault. * * * "

Such transactions involve only the parties concerned and are of no interest to others. Third parties are not in position to attack the transfer of property interest between others.

### Laches

In order to escape the statute of limitations and the charge of laches, appellants assert the alleged fraudulent acts of Mary Frances Sherwood Hopkins and Moses Hopkins were not discovered until 1945.

For instance, it is alleged it was not discovered until 1945 that Mary Frances Sherwood Hopkins was not the wife of Mark Hopkins. This statement was and is clearly false. In the affidavit in support of the motion to dismiss is attached a copy of an affidavit executed by Estelle Cochran Latta, one of the appellants herein, in which she states that her father learned in 1925 "that Mark Hopkins was never married". "My father (the father of this affiant) immediately called a meeting of the heirs and employed counsel to represent them". In the counter affidavit filed in this action executed by Jones M. Griffin, we find the following statement: "until, about the year 1925 affiant and other heirs of Mark Hopkins in North Carolina first learned that Mark Hopkins died intestate and left no wife and children and left an estate".

Another of the appellants' "new" discoveries in 1945 was the recorded records of the deeds referred to in the complaint. All of these deeds were executed and duly recorded during the administration of the estate. This constituted constructive notice to the world that the appellants were so charged from the date of recordation.[12] Their failure to obtain actual knowledge of their existence was due to their own negligence and cannot be made the basis of a long overdue discovery. If they did not have actual knowledge, the means of knowledge was available and means of knowledge is equivalent to knowledge.[13]

Appellants further allege in paragraph 22 of their complaint: "That in 1945 upon the discovery that said statements were false, the legal heirs of Mark Hopkins immediately employed counsel and proceeded to unfold the secret schemes, fraud, and misrepresentations by and between Mary Frances Sherwood Hopkins, and Moses Hopkins, and to assert their rights in and to said estate."

This allegation is not only refuted by the affidavits on file, but by the records of this court in the Freeman case, where, in paragraph three of the third cause of action, it is alleged: "That the plaintiff had no no-

---

[11] 11b Cal.Jur. §. 647, p. 30; 11b Cal. Jur. § 1316, p. 827; Wood v. Curran, 99 Cal. 137, 141, 33 P. 774; Reed v. Hayward, 23 Cal.2d 336, 342, 144 P.2d 561.

[12] People v. O'Brien, 96 Cal. 171, 179, 31 P. 45; Teall v. Slaven, C.C.N.D.Cal., 40 F. 774, 779; Denike v. Santa Clara Valley Agricultural Society, 9 Cal.App. 228, 231, 98 P. 687; Cal. Probate Code,

§ 1222; Bagley v. Bloom, 19 Cal.App. 255, 261, 125 P. 931.

[13] Malone v. Clise, 18 Cal.App.2d 154, 157, 63 P.2d 321; Greene v. Locke-Paddon Co., 36 Cal.App. 372, 374, 172 P. 168; Cal. Civ.Code, § 19; 20 Cal.Jur. § 4, p. 234; Miller v. Ash, 156 Cal. 544, 557, 105 P. 600; Garstang v. Skinner, 165 Cal. 721, 727, 134 P. 329.

tice, knowledge or suspicion of the existence of any such omitted property or assets; nor had he any reason to apprehend the existence of the same such as to put him upon inquiry; that he gained knowledge and information concerning this omitted property and assets by accident and then not until the months of July and August, 1925.

"That while on a visit to the State of California, he learned through the cashier and the vice-president of the National Bank of D. O. Mills and Company, at Sacramento, and through an officer of the Wells Fargo Bank & Union Trust Company, at San Francisco, for the first time of the existence of personal property and assets belonging to and still standing at that time in the name of Mark Hopkins and he learned at that time and for the first time that the said property and assets had never been inventoried nor distributed in the said Mark Hopkins' Estate."

 The allegation of the first discovery in 1945 is plainly false. It was made in the attempt to evade the statute of limitations, the charge of laches, and fully justifies and demonstrates the feasibility of the procedure followed in this case.

 Appellants recognize in their brief that recovery can be had only through allegations of extrinsic fraud and that allegations of intrinsic fraud will be of no avail to them. In paragraph seventeen of the complaint it is alleged that the names and addresses of the heirs were concealed from the Court and Clerk. The fraudulent failure to set forth the names and addresses of the heirs in a petition for letters of administration has been held to be ex-

trinsic fraud,[14] and appears to be the rule in California, notwithstanding some cases holding to the contrary.[15] The only way such information could be concealed from the clerk would be by failure to set forth said names and addresses in the petition for letters of administration. To this extent the complaint alleges extrinsic fraud and to the same extent emphasizes knowledge and means of knowledge in 1925. The administrator, acting in a fiduciary relationship, was charged with the utmost good faith to the heirs and the court and any breach of trust would be deemed extrinsic fraud.[16]

 Clearly the complaint is barred by the provisions of § 338 of the Code of Civil Procedure of California.

The alleged fraud was completed upon the granting of the decree of distribution in 1883, and as heretofore pointed out, the appellants have had actual knowledge of the alleged fraud herein complained for over twenty years. Time, death and destruction by fire have blotted out the events of that period beyond the restoration of the living. It is not only a closed chapter but a sealed chapter in the lives of those involved. The burned records cannot be restored. The dead cannot be resurrected. The fortune accumulated by Mark Hopkins long ago passed through and into many hands, far removed from the generation in which he lived. To attempt to disentangle this estate would be unjust and inequitable. Equity frowns upon stale demands. Equity declines to aid those who have slept on their rights. The appellants' alleged claims long ago were lost by reason of gross laches.

The judgment of dismissal is affirmed.

---

14 Hewett v. Linstead, 49 Cal.App.2d 607, 613, 122 P.2d 352; Hewitt v. Hewitt, 9 Cir., 17 F.2d 716, 717; Duffy v. Duffy, 82 Cal.App.2d 203, 207, 186 P.2d 61; Larrabee v. Tracy, 21 Cal.2d 645, 651, 134 P.2d 265.

15 Monk v. Morgan, 49 Cal.App. 154, 160, 192 P. 1042; Mulcahey v. Dow, 131 Cal. 73, 78, 63 P. 158.

16 Purinton v. Dyson, 8 Cal.2d 322, 325, 65 P.2d 777, 113 A.L.R. 1230; Larrabee v. Tracy, 21 Cal.2d 645, 650, 134 P.2d 265; 11a Cal.Jur. § 23, p. 75; In re Palm's Estate, 68 Cal.App.2d 204, 211, 156 P.2d 62.