[Civ. No. 1742. Third Appellate District.—January 8, 1918.]

HENRY T. JAMES, etc., Appellant, v. P. B. STEIFER MINING COMPANY (a Corporation) et al., Respondents.

CORPORATION LAW — MISAPPROPRIATION BY DIRECTORS — SUIT BY STOCK-HOLDERS. — The fraudulent appropriation of the funds and the spoliation and destruction of the property of a corporation through the agency of its directors presents an obvious instance for the interposition of equity at the suit of a stockholder or stockholders, who sustain a fiduciary relation to the corporation whose interests they really represent in the action.

ID. — CANCELLATION OF STOCK FRAUDULENTLY ISSUED — STOCKHOLDER'S SUIT.—Issuance of capital stock without consideration affords an

instance of the violation of article XII, section 11, of the constitution, and section 359 of the Civil Code, which may be redressed in a suit by a stockholder against the corporation and the directors, as the corporation is concerned in the cancellation of stock that have been fraudulently issued.

ID.—FRAUDULENT APPROPRIATION OF STOCK—LIABILITY OF DIRECTORS.— Where treasury stock is sold, and the proceeds fraudulently appropriated by a third party with the approval, sanction, and connivance of the directors, they are liable to the corporation for the amount of the sale in an action by a stockholder.

ID.—ISSUANCE OF STOCK FOR WORTHLESS LAND—RELIEF IN STOCK-HOLDER'S SUIT.—Issuance of stock in exchange for worthless land is a fraud against the corporation and cognizable in a stockholder's action for cancellation of the stock.

ID.—CANCELLATION OF NOTES AND MORTGAGE—PLEADING—SUFFICIENCY OF ALLEGATION.—In a stockholder's action for cancellation of corporation notes and mortgage, an allegation that the notes were given for specified sums, and stating that the corporation was not indebted at any time to the payee in any sum whatever, is a sufficient allegation of fraud.

ID.—DEMAND UPON DIRECTORS TO BRING ACTION—WHEN UNNECESSARY. Demand upon directors to bring an action to recover corporation money or property which they had wickedly and fraudulently appropriated and sequestered, is not required as a condition precedent to an action by the stockholders, where it appears that the demand would have been futile.

ID.—PERSONAL WRONGS OF STOCKHOLDER—JOINDER WITH INJURIES TO CORPORATION IMPROPER.—In a stockholder's action against a corporation and its directors, it is improper to join a cause of action for personal wrongs, such as the purchase by plaintiff of his stock by reason of false representations, with causes of action for injuries to the corporation.

APPEAL from a judgment of the Superior Court of Butte County. Henry C. Gesford, Judge Presiding.

The facts are stated in the opinion of the court.

Frank D. McClure, and Franklin P. Bull, for Appellant.

Frank Freeman, W. M. Bowen, and George E. Gardner, for Respondents.

BURNETT, J.—This appeal, coming up on the judgment-roll, is from a judgment duly rendered after a demurrer, both general and special to the amended complaint,

had been sustained without leave further to amend. The order does not specify the ground upon which the demurrer was sustained, but merely sustains the demurrer generally.

The grounds of demurrer are (1) that the complaint does not state facts sufficient to constitute a cause of action; (2) that several causes of action have been improperly united; namely, a cause of action in favor of, and on behalf of, the corporation against said defendants other than the corporation and a cause of action in favor of plaintiff stockholders in their personal capacity, for injuries to their personal rights by said defendant; (3) that the complaint is respectively ambiguous, uncertain, and unintelligible. It may be here interjected that defendants also filed an answer denying all material allegations as to fraudulent conduct and controverting any imputation of evil motives on the part of defendants.

With the grounds of demurrer in mind we may turn to the complaint.

The first part of the complaint alleges generally the incorporation of the defendant corporation, the names of its directors and officers, the amount and par value of its capital stock.

In paragraph 7 it is alleged that there has been issued to P. B., M. V., S. M., H. M., Mrs. Barbara A. and Mary C. Steifer, each, 56,729 1/3 shares of the stock of said corporation "without consideration, and in fraud and damage of said company, and in violation of the laws of the state of California."

Plaintiff then purports to set forth the elements excusing a demand upon the directors as being useless and futile, to bring an action to vindicate his rights and redress his wrongs.

In paragraphs 9 and 10 plaintiff alleges the purchase by him in August and December, 1911, of 825 shares of supposed treasury stock, for which he paid $3,750; that no part of said sum was received by the treasury of said company, "and said money was wrongfully converted from the funds of said company by said M. V. Steifer and Mary C. Steifer and other persons unknown to plaintiff, for their own personal possession and uses, with the approval, sanction and connivance of the directors of said company, all to the detriment, damage and fraud of said company, and the stockholders thereof."

Paragraph 11 purports apparently to set forth facts constituting a fraud upon plaintiff (and others named) personally. It avers that in January, 1902, defendants, other than defendant corporation, and others unknown to plaintiff, unlawfully and fraudulently conspired and combined to defraud plaintiff and all others who should purchase stock, by organizing a corporation to be known as the P. B. Steifer Mining Company, and placing certain shares on the market for sale and selling the same by false representations. The alleged false representations are then particularly set forth and alleged to be false. Paragraphs 11a and 11b allege that plaintiff and the other stockholders believed the foregoing fraudulent representations; otherwise, they would not have purchased stock. Plaintiff, however, does not aver that the stock was not of the value which he gave for it at the time he purchased, nor that he was otherwise damaged by the reliance on said representations.

The complaint then proceeds to set forth the issuance of three hundred and forty-seven thousand five hundred shares of capital stock to P. B. Steifer in return for certain mining land conveyed by P. B. Steifer to the corporation; that said land was worthless and known to be so by the defendant directors,—all of which is a fraud upon the company and a breach of trust. In the same paragraph is alleged the fraudulent expenditure of the corporate money in useless buildings, flumes, and machinery and in the payment of excessive and illegitimate salaries and commissions; that certain shares of stock were sold for sums ranging from five to eight dollars per share, but that of said sums the corporation received at times but one dollar a share and at others nothing, the difference being pocketed by defendants and their confederates. It is then stated that three hundred shares of stock were sold to Alice I. Hunt and Louise I. Hunt, upon a guaranty that a dividend of one thousand five hundred dollars would be paid thereon, or in default thereof the company would loan said Hunts the difference between the dividend and one thousand five hundred dollars; that no dividend was paid, and the officers fraudulently and without authority loaned said Hunts $952.50. It nowhere appears, however, that said sum has not been repaid nor that the Hunts were not responsible persons. Continuing, the paragraph avers the fraudulent issuance to Mary C. Steifer, without con-

sideration, of thousands of shares of stock, the subsequent sale by the corporation of said stock and payment of exorbitant commissions by the corporation, the proceeds going to Mary C. Steifer, the subsequent borrowing by the corporation of said sum from Mary C. Steifer, and the giving to her of the company's notes and mortgage therefor.

Further alleging details of the transaction last above referred to, in paragraph 13 it is stated that the company gave to Mary C. Steifer its promissory notes (setting forth amounts and terms) and a mortgage to secure payment thereof on all the real and personal property of the corporation, and it is stated, on information and belief, that the company was not at any time indebted to said Mary C. Steifer in any sum whatever.

The rest of the complaint complains of the assessment levied on the stockholders of the corporation. It is averred that said assessment is, by the resolution creating it, for the purpose of paying in part an indebtedness of some eighty-nine thousand dollars alleged to be due Mary C. Steifer, whereas, the total corporation debts amounted only to seven thousand dollars, and, therefore, said assessment is unnecessary; that plaintiff and others have not paid the same, and their stock is advertised for sale; that the said Steifers have never paid the assessment upon their stock, but have fraudulently marked their assessments as paid upon the books of the corporation.

In paragraph 16 it is alleged, on information and belief, that the directors, on January 4, 1915, did not levy an assessment upon all the stock of the corporation, to wit, 515,429 shares, but upon 511,949 shares only.

The prayer in substance purports to ask:

1 and 2. That the issuance of the capital stock to the defendants and others named, other than the corporation, be declared illegal and void, and a fraud on the corporation and the shareholders thereof.

3. "That the sale of said capital stock to plaintiff and all other stockholders, other than defendants, was made in furtherance of said conspiracy to defraud them and made upon false and fraudulent representations."

4. That the mortgage and notes given by the corporation to Mary C. Steifer be declared to have been given without consideration and be declared null and void and canceled.

5. That the assessment be declared unlawfully levied, and that it be set aside and its collection be restrained.

6. That the sale of the stock be restrained.

7. That plaintiffs be given costs and general relief.

That the amended complaint states a cause of action in behalf of the corporation against the directors and those co-operating with them cannot be doubted. The case is brought clearly within the rule announced and illustrated by many authorities to which attention is directed in the brief of appellant. It is sufficient to refer to *Woodruff* v. *Howes*, 88 Cal. 184, [26 Pac. 111]; *Wickersham* v. *Crittenden*, 93 Cal. 17, [28 Pac. 788]; *California Calaveras Min. Co.* v. *Walls*, 170 Cal. 285, [149 Pac. 595]; *Whitten* v. *Dabney*, 171 Cal. 621, [154 Pac. 312]; *Harvey* v. *Meigs*, 17 Cal. App. 353, [119 Pac. 941].

The fraudulent appropriation of the funds and the spoliation and destruction of the property of the corporation through the agency of the directors presents an obvious instance for the interposition of equity at the suit of a stockholder or stockholders who sustain a fiduciary relation to the corporation whose interests they really represent in the action. The general principle is stated in High on Injunctions, volume 2, section 1203, as follows: "The protection of the rights of shareholders in incorporated companies against the improper or illegal action of other shareholders, or of the officers of the company, is a favorite branch of the jurisdiction of equity by injunction. And it may be asserted as a general rule, that courts of equity may enjoin, in behalf of the stockholders of an incorporated company, any improper alienation or disposition of the corporate property for other than corporate purposes, and will restrain the commission of acts which are contrary to law and tend to the destruction of the franchise, as well as the improper management of the business of the company, or a wrongful diversion of its funds or from depriving plaintiff of his rights as a corporator." And it is equally clear from the authorities that a court of equity, as far as it can be done, will compel the restitution and restoration of the funds or property of the corporation that have been misappropriated or destroyed by the directors and those acting in concert with them. To make it manifest that such is the case before us we may recall more specifically a few of the facts set forth in the amended complaint.

The allegation in the seventh paragraph as to the issuance of over three hundred thousand shares of the capital stock without consideration affords an instance of the violation of article XII, section 11, of the constitution of the state, and section 359 of the Civil Code, and the directors thereby committed a breach of trust to be redressed in an action of this character. Naturally the corporation is concerned in the cancellation of certificates of stock that have been fraudulently issued and are void. (*Cortelyou* v. *Imperial Land Co.,* 156 Cal. 376, [104 Pac. 695].) The form of said allegation is subject to criticism but the averment should be deemed sufficient as against a general demurrer.

In the ninth paragraph there is an imperfect attempt to allege that treasury stock was sold to plaintiff and the proceeds fraudulently appropriated by M. V. Steifer with the approval, sanction, and connivance of the directors of the company. If true, the directors would, of course, be liable to the corporation for the amount of the sale and it could be recovered in this action.

In the twelfth paragraph it appears that the defendants, other than the corporation, issued to said P. B. Steifer three hundred and forty-seven thousand five hundred shares of the capital stock for the right, title, and interest of said Steifer in and to certain alleged mining land, when said defendants knew that said right, title, and interest of said P. B. Steifer "was worthless and without value and that the transfer of said capital stock to said P. B. Steifer was without consideration," etc. Therein, as we view it, is presented, though somewhat inartificially, another instance of fraud against the corporation and cognizable in this proceeding. In the same paragraph is set forth, as we have seen, the useless expenditure of a large amount of the funds of the corporation in the erection of buildings that were not designed or needed for the legitimate purposes of the corporation, and also that large blocks of treasury stock were sold and the money derived therefrom converted to their own use by said defendants, that they also paid to themselves large sums of money for traveling expenses, hotel bills, and salaries out of all proportion to the expenses incurred and the services rendered; that certain shares of stock belonging to the corporation were sold and only a portion of the proceeds accounted for; that thousands of shares were issued to Mary C. Steifer without considera-

tion and that portions of said stock were sold by the secretary of the corporation and he was paid therefor out of the funds of the company a large sum for commissions, and that a note and mortgage were given to said Mary C. Steifer to cover money borrowed from her but which she had received as the proceeds of the sale of said stock fraudulently issued to her as above stated.

In the thirteenth paragraph there is the additional allegation that two notes and a mortgage were given to said Mary C. Steifer for the sum of $49,837.07 and forty thousand dollars respectively, whereas the corporation was not indebted to her in any sum whatever. The foregoing are deemed sufficient specifications of fraudulent transactions affecting the interests of the corporation to establish the right of plaintiff to be heard in a court of equity in this kind of proceeding. As indicated, some of the allegations are subject to verbal criticism, but we think respondents seek to apply too strictly the technical rules of pleading. One or two specifications may be noticed briefly.

The failure of plaintiff to make demand upon the directors to bring the action is sufficiently excused. Of course, it is improbable that they would be guilty of such stultification as to sue themselves to recover for the corporation money or property which they had wickedly and fraudulently appropriated and sequestered. The facts alleged show that such demand would have been ignored or scornfully refused. It is well settled that where it appears that a demand, if made, would have been futile, it is not required. We may add that the answer furnishes additional confirmation that no such suit would have been brought by the directors. Therein they disavow any corrupt motive, deny any improper disposition of the property of the corporation, and affirm the utmost good faith in all their transactions relating to the affairs of the company. "While it is a general rule that a member or stockholder of a corporation cannot have redress from any wrong or injury to the corporation until he had made an earnest effort to secure proper action by the managing body of the corporation, yet when it appears that it would be futile and useless to make a demand upon the corporation or upon its trustees or officers to commence a suit to obtain relief, or that the trustees are parties to the suit complained of and claim the right to do what they did, no such demand may be

made." (*Ashton* v. *Dashaway Assn.*, 84 Cal. 61, [7 L. R. A. 809, 22 Pac. 660, 23 Pac. 1091]; *Woodruff* v. *Howes,* 88 Cal. 184, [26 Pac. 111]; *Von Arnim* v. *American Tube Works,* 188 Mass. 515, [74 N. E. 680]; *Simon* v. *Weaver,* 143 Wis. 330, [127 N. W. 950].)

Nor can it be maintained that the action is barred by the statute of limitations or by the laches of plaintiff. The suit was brought certainly within a reasonable time after the commission of some of the reprehensible acts. This is especially true of the execution of the notes and mortgages to said Mary C. Steifer. Some of the other instances were quite remote and there should have been an allegation as to when discovery of their fraudulent character was made by plaintiff. The pleading is silent as to that point. In the Whitten case, *supra,* it is declared that a stockholder who institutes such an action as this does so "in a purely representative character and as a trustee to redress corporate injuries," and that the provision of the statute of limitations applicable to such action is subdivision 4 of section 338 of the Code of Civil Procedure, providing that actions for relief on the ground of fraud or mistake must be commenced within three years, but the cause of action is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

While the complaint as to some of the specifications is, therefore, defective in this particular, yet upon the whole there is a sufficient designation of fraudulent acts within a short period anterior to the filing of the complaint to avert this general attack upon the pleading.

As to the misjoinder of causes of action it is undoubtedly true that certain acts of a personal nature resulting in injury to plaintiff individually and not producing any wrong to the corporation have been set forth in the complaint in connection with those of the nature to which we have referred. Such, for instance, is the purchase by plaintiff of his stock by reason of the false representations of said defendants. It does not appear that the corporation was damaged by such purchase. Nor can it be held that the corporation would be benefited by the annulment of said purchase. The disposition of the funds arising from the purchase is manifestly of concern to the corporation upon the theory that it was treasury stock, but if plaintiff by reason of false representations

paid for the stock more than it was worth, that is a matter of his personal interest and his wrong should be redressed in a personal action against those, who made such representations. The matter of the assessment upon plaintiff's stock involves also, as we view it, a cause of action personal in its nature. The corporation would hardly be in a position to complain because the stockholders paid into its treasury more money than was needed. The individual stockholder is wronged when he is called upon to pay an assessment illegally levied upon his stock, and he may, under certain circumstances, restrain the sale to enforce such assessment, but such contingency does not constitute the basis for an action by or on behalf of the corporation. The observation herein does not refer to the allegation in the complaint as to the failure of the directors to assess a certain number of shares of the capital stock and their conduct in wrongfully crediting payment upon certain other shares. These latter considerations, of course, are of corporate concern and are properly included in an action like this.

As to this feature of the case we find some profitable suggestions in the opinion of *Turner* v. *Markham*, 155 Cal. 562, [102 Pac. 272], wherein it was held that "an action brought by a stockholder for the benefit of a corporation is in its nature and essence to recover redress for some legal wrong which the corporation itself has suffered and to prevent a failure of justice," but "if the corporation itself has suffered no wrong cognizable at law or in equity, it matters not how just and how grievous may be the complaint of the stockholder, nor how complete may be the proof of his individual loss, damage, or injury, but he will be compelled to resort to his individual action to obtain a personal recovery." Therein is an illustration somewhat in point here to this effect: "If A upon the street sells to B his own stock under the representation to B that it is treasury stock, the corporation is not injured, nor is A estopped in an action by the corporation from asserting that the stock was his own. B, to whom the representations were made, may have suffered by them, may have his cause of action for redress and may insist upon an estoppel against A, but that estoppel only runs for his benefit and to prevent A from taking advantage of the wrong which he has perpetrated not upon the corporation but upon B."

Without going further, we think it can be said that a cause of action for personal wrongs has been improperly joined with one for injuries to the corporation and that the demurrer upon that ground was well taken. But it is manifest that this defect can be easily remedied, and we are satisfied that plaintiff should have been allowed to amend the complaint.

In Schaake v. Eagle etc. Can Co., 135 Cal. 472, [63 Pac. 1025, 67 Pac. 759], it was held that "if a complaint states a cause of action, it is an abuse of discretion, apparent upon the face of the record, to sustain demurrers thereto on any ground without granting leave to amend. The fact that the complaint had been once before amended does not justify a refusal of leave to amend in such case. Where the order refusing leave to amend a complaint stating a cause of action was inserted in the order sustaining demurrers thereto, it cannot be presumed that the plaintiff asked leave to amend in advance of the ruling. The order is deemed excepted to by force of the statute, and the plaintiff is not required to move to vacate or modify it in order to have the abuse of discretion reviewed upon appeal."

We think the judgment should be reversed, with direction to allow the plaintiff to amend his complaint if he so elects. It is so ordered.

Chipman, P. J., and Hart, J., concurred.