[Civ. No. 2788.    Third Appellate District.—February 3, 1926.]

# D. J. METZGER et al., Appellants, v. ROLLA VESTAL et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—FINAL DISTRIBUTION—TIME AND PLACE OF HEARING—NOTICE.—Where, upon the filing of the final account of the executor and his petition for final distribution, the probate court set a day for the hearing of the petition and ordered the clerk to give notice of the hearing thereof, the giving of such notice by the clerk on the same day on which the order was made, signed by him and filed in his office on the day it bears date, together with proof of posting copies thereof, was a sufficient compliance with section 1668 of the Code of Civil Procedure.

[2] ID.—INTERPRETATION OF WILL—DECREE OF DISTRIBUTION—INSUFFICIENT GROUNDS FOR ATTACK.—A decree of distribution which has become final cannot be attacked on the ground that the court erroneously interpreted either the terms of the will or the law applicable thereto.

[3] ID.—OMNIBUS CLAUSE—ASSIGNMENT OF CORPORATE STOCK—PASSING OF TITLE—CLAIM TO ADDITIONAL PROPERTY—ACTIONS.—Where the omnibus clause of a decree of distribution, which granted an equal division of shares of stock in a corporation to the wife and son of the deceased, was sufficient to pass title to property omitted from the particular description contained therein, the assignees of the wife's interest could maintain an action to establish a claim to additional property on the ground that the deceased owned all the stock of the corporation or that such stock was community property.

[4] PLEADING—SUSTAINING OF DEMURRER TO COMPLAINT—AMENDMENTS—APPEAL.—Plaintiffs, against whom a judgment was entered on the same day that a demurrer to the complaint was sustained without leave to amend, are not required, in order to have the point reviewed on appeal, to ask leave to amend in advance of the ruling upon the demurrer or to move to vacate the judgment for the purpose of permitting them to amend.

[5] ID.—COMPLAINT—AMENDMENTS.—Unless it be clear to a trial court that a defective complaint cannot be amended so as to obviate objections made thereto, a plaintiff desiring to amend after demurrer

1.  See 12 Cal. Jur. 175.
2.  See 12 Cal. Jur. 205.
3.  See 12 Cal. Jur. 196.
5.  See 21 Cal. Jur. 120.

sustained should be allowed reasonable opportunity to do so, in order that the case may be decided upon the merits rather than upon technical rules of pleading.

(1) 24 C. J., p. 513, n. 17 New.    (2) 24 C. J., p. 532, n. 29. (3) 24 C. J., p. 531, n. 23.    (4) 3 C. J., p. 792, n. 31.    (5) 31 Cyc., p. 352, n. 52.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Reversed.

The facts are stated in the opinion of the court.

James T. Matlock, Jackson Hatch and Huston, Huston & Huston for Appellants.

W. A. Fish and W. P. Johnson for Respondents.

FINCH, P. J.—The trial court sustained demurrers to the complaint without leave to amend and thereupon entered judgment in favor of the defendants. This appeal is from the judgment.

It appears from the complaint that George W. Vestal died in the county of Tehama on the ninth day of April, 1918, leaving a valuable estate consisting of the capital stock of the defendant corporation; that he left a last will in which he named defendant Rolla Vestal, a son, as executor, and by the terms of which, after making certain bequests of money, he gave the remainder of his property to his surviving wife, Clara Vestal, and his son, Rolla Vestal, share and share alike; that the will was admitted to probate and Rolla Vestal was appointed executor and acted as such throughout the administration of the estate; that all bequests have been paid; that on the twenty-ninth day of March, 1920, a final decree of distribution was entered, distributing the remainder of the estate to Clara Vestal and Rolla Vestal in equal shares; that the decree recites that 475 shares of the capital stock of the corporation are a part of such remainder; that on the twenty-first day of November, 1922, Clara Vestal transferred her half of the 475 shares of stock to the plaintiffs; that thereafter the plaintiffs conveyed the same to defendant Schafer; and that on the eighth day of November, 1922, Clara Vestal "did for a valuable consideration convey and set over and sell

unto these plaintiffs all of her right, title, and interest of every kind in and to all the property, real, personal, and mixed, of the estate of the said George W. Vestal, deceased, and all her said community property, and all other rights and interests of every kind therein acquired by her by the decree of final distribution.''

The prayer of the complaint is, in substance, for a decree adjudging that Clara Vestal, upon the death of George W. Vestal, succeeded to one-half of the capital stock of the corporation as her share of the community property, and that she took one-half of the remainder under the will; that the plaintiffs are the owners of 467½ shares of the capital stock by reason of their purchase thereof from Clara Vestal; that an accounting of the ''business, properties, and transactions'' of the corporation be had; and that ''plaintiffs have such other and further relief as they may be entitled to have in equity.''

All of the defendants demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The defendant Rolla Vestal demurred upon the further grounds that ''plaintiffs have no legal capacity to sue''; that there is a misjoinder of parties and of causes of action; that the complaint is uncertain in specified particulars; that it contains several causes of action which are not separately stated, and that the alleged cause of action to cancel the certificate of stock for 475 shares originally issued to him is barred by the statute of limitations.

The complaint covers forty typewritten pages and is therefore too long to be set out at length. Parts thereof will be stated in connection with the discussion of questions relating thereto.

[1] Appellants contend that the decree of distribution is void because no legal notice of hearing the petition therefor was given, in that the court rather than the clerk fixed the time for such hearing. Upon the filing of the final account of the executor and his petition for distribution the court, on the third day of March, 1920, made the following order: ''It is hereby ordered, that Monday the 22nd day of March, A. D., 1920, at 10 o'clock, A. M. be and the same is hereby appointed for the settlement of the said account and for hearing said petition for distribution, and that the clerk of this Court give notice thereof by causing notice to

be posted in at least three public places in said Tehama County, at least ten days before said 22nd day of March, A. D. 1920, according to law." The clerk gave notice of the hearing as follows:

"Notice is hereby given that Rolla Vestal, the Executor of the Estate of George W. Vestal, deceased, has rendered and presented for settlement, and filed in said Court his final account of his administration of said estate; and a petition for the distribution of the residue thereof; and that Monday the 22nd day of March, 1920, at 10 o'clock A. M., at the Court Room of said Court at the Court House in the town of Red Bluff, in said Tehama County, has been duly appointed by the said Court for the settlement of said final account and hearing said Petition for distribution, at which time and place any person interested in said estate may appear and file his exceptions in writing to said account and petition, and contest the same.

"Dated: March 4, 1920.

"(Seal)                               "H. G. KUHN,
                                              "Clerk.
                                    "By C. A. LUNING,
                                              "Deputy Clerk."

Section 1668 of the Code of Civil Procedure provides that "the clerk of the court must set the petition for hearing by the court, and give notice thereof, . . . setting forth the name of the estate, the executor or administrator, and the time appointed for the hearing of the petition." The foregoing notice of the hearing, signed by the clerk, was filed in his office on the day it bears date, together with proof of posting copies thereof as required by law. If it be conceded that the order of the court was ineffective, the clerk's notice, together with the filing and posting thereof, was a sufficient compliance with the statute. As stated in the opinion of the trial court, "All these acts on the part of the clerk amounted to the appointment by him of a day for the hearing and it was all on March 4, 1920, made a matter of record in his office. The time fixed for the hearing was appointed both by the court and the clerk, acting in harmony and in unison and there was no defect in the notices given for the hearing of the petition for distribution." The decree of distribution provides:

"That the whole of the residue of said estate hereinafter particularly described, and any other property not now known or discovered, which may belong to said estate, or in which the said estate may have any interest, be, and the same is hereby distributed as follows: To Clara Vestal, surviving widow of said decedent, and Rolla Vestal, a son, the whole of said residue in equal shares, that is to say, share and share alike. The following is a particular description of the said residue of said estate referred to in this decree, and of which distribution is now ordered as aforesaid: . . . four hundred and seventy-five shares of the corporate stock of the said George Vestal Company, a corporation."

[2] Appellants contend that the decree is erroneous in that it distributes to Clara Vestal only half of the property, whereas she was entitled to have three-fourths thereof distributed to her. The allegations of the complaint in this connection are to the effect that the court erroneously interpreted either the terms of the will or the law applicable thereto. Since the decree has become final, it is clear that it cannot be attacked on such grounds.

The allegations of the complaint tending in any degree to show extrinsic fraud in procuring the decree of distribution are so meager and the theory upon which plaintiffs seek relief by reason of such fraud is so uncertain that it would be ill-advised, in advance of appropriate pleadings, to discuss the theories upon which plaintiffs may or may not be entitled to judgment on the ground of fraud. It is sufficient to say that the complaint is insufficient to warrant a judgment in favor of plaintiffs on the ground of fraud upon any theory. (*Simonton* v. *Los Angeles T. & S. Bank,* 192 Cal. 651, 659 [221 Pac. 368].)

[3] There is a feature of the case, however, which does not involve an attack upon the decree of distribution, and which evidently was not called to the attention of the trial court, since it is not referred to in the opinion of the court. The omnibus clause of the decree is sufficient to pass title to property of the decedent omitted from the particular description contained therein. (*Smith* v. *Biscailuz,* 83 Cal. 344, 359 [21 Pac. 15, 23 Pac. 314]; *Humphrey* v. *Protestant etc. Church,* 154 Cal. 170, 172 [97 Pac. 187]; *Victoria Hospital Assn.* v. *All Persons,* 169 Cal. 455, 458 [147 Pac. 124];

*Heydenfeldt* v. *Osmont,* 178 Cal. 768, 773 [175 Pac. 1].)
Standing upon the very terms of the decree, therefore, and
their purchase of the property distributed to Clara Vestal,
the plaintiffs have the right to maintain an action to estab-
lish their claim that all of the capital stock of the corpora-
tion was the property of George W. Vestal at the time  of
his death and that they acquired a half interest therein by
their purchase thereof from Clara Vestal after the same
had been distributed to her. Additional allegations of the
complaint which are material to the particular question un-
der discussion will be stated generally in substance only.

"Many years before the beginning of this action . .
George W. Vestal and . . . Clara Vestal intermarried . . .
and lived together as husband and wife from that time con-
tinuously up to the date of the death of said George W.
Vestal." Neither of them had any property at the time of
their marriage and "whatever property or estate they ac-
quired during their marriage relationship was acquired by
them and each of them by their mutual undertakings and
efforts and not otherwise," and all of said property was at
all times and "at the time of the death of said George W.
Vestal, community property of said George W. Vestal and
said Clara Vestal." On the tenth day of February, 1904,
"George W. Vestal caused to be prepared and executed, and
caused to be filed, . . . articles of incorporation of" the
defendant corporation. It is stated therein that "the amount
of the capital stock of this corporation shall be twenty
thousand dollars, divided into one thousand shares of the par
value of twenty dollars each," that "the amount of said
capital stock which has been actually subscribed is twenty
thousand dollars, and the following are the names of the
persons by whom the same has been subscribed:

| Names of Subscribers. | No. Shares. | Amount. |
|---|---|---|
| George W. Vestal | 475 | 9,500.00 |
| Rolla Vestal | 475 | 9,500.00 |
| Clara Vestal | 45 | 900.00 |
| Ethel Gist | 4 | 80.00 |
| Robert Gist | 1 | 20.00" |

The articles of incorporation were signed and acknowl-
edged by all of the subscribers. "At the time of the in-
corporation of the defendant corporation herein, it was well

understood, acknowledged and agreed by and between said George W. Vestal and said Clara Vestal that all the properties which were to be, and that were in fact conveyed to said defendant corporation were . . . to be in fact their community property . . . and that . . . such properties and interests should be and remain the community property of said George W. Vestal and said Clara Vestal, and . . . said Clara Vestal never did at any time . . . waive . . . her community interest in the said property, or in any of said property. . . . Said corporation was so organized and established only for the purpose of conveniently and properly controlling and handling said community properties, and for no other purpose or purposes." Clara Vestal "never did at any time or in any manner whatever enter into any agreement . . . concerning the issues of the shares of the stock of the defendant corporation to the persons named in the articles of incorporation . . . or as to the amount or number of shares of said corporate stock to be fixed, or that was fixed in said articles of incorporation, and that the organization of the said defendant corporation was the act solely of said George W. Vestal, and that said distribution of the shares of the stock of said defendant corporation was made and carried into execution by said George W. Vestal, without any consideration of, or acquiescence in, or consent to the same by said Clara Vestal, and . . . she never did agree or consent to said distribution of said corporate stock." The shares of stock of the corporation "represented in fact and in truth all the said community property of said George W. Vestal and said Clara Vestal, and . . . said corporation was so incorporated by said George W. Vestal with the object and for the purpose of carrying on the business which, before its organization he had been carrying on, and for the purpose of dealing only with all said properties . . . at that time owned by said George W. Vestal and said Clara Vestal, as community property." George W. Vestal, "without any consent whatever of said Clara Vestal, made, executed and delivered to said defendant corporation, assignments and transfers of all said community properties and delivered to said defendant corporation full possession and control of all said community properties, . . . and . . . said defendant corporation has never had at any time, or acquired in any way, any properties of any kind . . . save

and except those so delivered to it by said George W. Vestal, and the rents, issues and profits and accumulations thereof." At the time of the organization of the corporation, "no money whatever was paid" to it for the shares of stock issued to the subscribers, and the "amounts stated in said articles of incorporation to have been subscribed . . . were not then, and never were paid, or expected to be paid by said subscribers, and . . . no money whatever was ever paid into the corporation by any of the subscribers thereof, and . . . it was never understood or agreed that any money should be paid for said stock, and . . . the purpose of said George W. Vestal in causing to be organized the said defendant corporation never contemplated the actual ownership of said subscribers of the shares they subscribed for." The complaint does not allege that the stock was issued to the persons named in the articles of incorporation without consideration. Neither does it appear whether the alleged community property was acquired before or after the amendment of 1891 to section 172 of the Civil Code [Stats. 1891, p. 425] to the effect that the husband cannot make a gift of the community property, or convey the same without a valuable consideration, unless the wife consent thereto in writing. Rolla Vestal, Ethel Gist, and Robert Gist still hold the shares of stock originally issued to them.

The general allegations, that all the stock of the corporation was community property at the time of decedent's death, that one-half thereof was distributed to Clara Vestal, that she transferred her interest therein to plaintiffs, and that some of the defendants hold certain shares thereof under invalid claims of ownership, state a cause of action, even though some of the particular facts alleged detract somewhat from the force of such general allegations and thereby render the complaint uncertain. If the capital stock was issued to the persons named in the articles of incorporation, without consideration, and pursuant to an agreement or understanding with them that they were not to become the owners thereof but were to hold the mere legal title for the sole purpose of enabling them to participate in the management of the corporation's business, then all of such stock was the community property of George W. Vestal and his wife, and by the terms of decedent's will, as interpreted by the court, the whole thereof was given to

Clara Vestal and Rolla Vestal in equal shares. If the facts be as so stated, then Clara Vestal did not receive all the shares of stock which were distributed to her, and she had the right to sue for the remainder thereof. Being the owner of such additional shares, her transfer thereof to plaintiffs, under the authorities cited, gave them the same right which she had to sue for their recovery.

[4] Plaintiffs did not make application for leave to amend. Respondents contend that, therefore, the plaintiffs are not in a position to complain of the order denying them leave to amend, citing *Bailey Trading Co.* v. *Levy,* 72 Cal. App. 339 [237 Pac. 408, 412], and the cases therein referred to. In the case cited, the record shows that the demurrer was interposed to an amended complaint; that it was argued by counsel for the respective parties at 10 o'clock A. M. on the fourteenth day of January, 1924, and taken under advisement by the court; that on the same day, at 2 o'clock P. M., the court entered an order sustaining the demurrer without leave to amend; and that judgment in favor of the defendant was given and entered on the twenty-eighth day of January, 1924. The plaintiff in that case, therefore, had fourteen days within which to apply for leave to amend. In this case, the demurrers were argued on the twenty-sixth day of February, 1923, and taken under advisement by the court; on the twenty-fifth day of June, 1923, the court ordered the demurrers sustained without leave to amend and on the same day entered judgment against plaintiffs. Plaintiffs had no knowledge or notice that the demurrers had been sustained until after the judgment had been entered. Respondents say: "Counsel had ample time while the demurrer was under advisement to ask leave to file an amended complaint. Furthermore after the court sustained the demurrer without leave to amend and gave judgment the plaintiffs could have made application to the lower court to set aside the judgment, under the provisions of section 473 of the Code of Civil Procedure in order that they might file an amended complaint." Plaintiffs were not required, in order to have the point reviewed on appeal, to ask leave to amend in advance of the ruling upon the demurrers or to move to vacate the judgment for the purpose of permitting them to amend. (*Schaake* v. *Eagle etc. Can Co.,* 135 Cal. 472, 480 [63 Pac.

1025, 67 Pac. 759]; *James* v. *Steifer Mining Co.*, 35 Cal. App. 778, 788 [171 Pac. 117].) The rule that a party, against whom an order has been entered sustaining a demurrer without leave to amend, must ask leave to amend in order to have the ruling reviewed on appeal presupposes that the complaining party had an opportunity to ask such leave prior to the time of entry of judgment on the order. To hold otherwise would be to carry a technical rule to the extreme of absurdity.

[5] The complaint in question was the original complaint, it never having been amended. While the demurrers were properly sustained, at least upon some of the special grounds urged, the plaintiffs ought to be permitted to amend in order that the case may be decided upon the merits rather than upon technical rules of pleading. "Unless it be clear to a trial court that a defective complaint cannot be amended so as to obviate the objections made thereto, a plaintiff desiring it should be allowed reasonable opportunity to so amend." (*Payne* v. *Baehr,* 153 Cal. 441, 447 [95 Pac. 895, 897].)

The judgment is reversed with direction to the trial court to grant the plaintiffs leave to file an amended complaint.

Hart, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 5, 1926.