[Civ. No. 1519. Fourth Appellate District.—March 1, 1935.]

MARJORIE M. MACKAY, as Guardian, etc., et al., Appellants, v. CLARK RIG BUILDING COMPANY (a Corporation) et al., Respondents.

Goodman, Bachrack & Brownstone and Herman A. Bachrack for Appellants.

George Acret, McAdoo & Neblett and Wm. H. Neblett, for Respondents.

JENNINGS, J.—This is an appeal by the plaintiffs from a judgment dismissing the action as to all defendants named in the complaint. The judgment of dismissal was rendered in conformity with a prior order of the court sustaining demurrers both general and special to the complaint without leave to amend. The appeal is also taken from an order denying a motion of plaintiffs to vacate the judgment which motion was made pursuant to the provisions of section 473 of the Code of Civil Procedure and from an order denying an application of plaintiffs for permission to file a second amended complaint and from an order denying a motion for a new trial.

It is apparent from the record and from the briefs of counsel that the judgment dismissing the action is the chief object of attack on this appeal. As above noted, this judgment was entered upon the sustaining of demurrers to the

complaint without leave to amend. The primary matter which is here presented for consideration is therefore to discover whether the complaint is vulnerable to the attack directed against it by the demurrers. Consideration of this question necessitates an analysis of the complaint. In this connection, it must be observed that the judgment of dismissal, after stating that all demurrers, both general and special, had been sustained, recites that since it appeared to the court "that said plaintiffs, or either of them, have no cause of action against and could not state any cause of action against said defendants or any of them" it is ordered and adjudged that the action be dismissed as to all defendants. The complaint should therefore be considered first with reference to the objection that it wholly fails to state a cause of action against the defendants or against any defendant therein named.

The pleading which is entitled "Amended Complaint for Accounting" alleges that on October 4, 1929, the plaintiff Marjorie H. Mackay was by order of the superior court duly appointed general guardian of the person and estate of Samuel Clark, Jr., a minor; that she thereafter qualified and entered upon the discharge of her duties as such guardian; that she is the mother of the minor and until September 20, 1927, she was the wife of Samuel Clark, father of said minor; that the minor's father died, intestate, on the above mentioned date; that subsequent to the elder Clark's death his estate, consisting of both real and personal property, was administered in the Superior Court of Los Angeles County; that all claims against the estate and all expenses of administration were paid and on November 27, 1929, all of the property of the estate was ordered distributed in equal shares to the decedent's heirs at law who were the plaintiff Marjorie H. Mackay and the minor, Samuel Clark, Jr.; that at the time of his death and for eight years prior thereto the senior Clark was engaged in the business of rig building under the name of "Samuel Clark Rig Builder" as sole owner of such business and that the business and all assets thereof were his separate property; that plaintiffs are informed and believe and upon such ground allege that the business was successful and profitable "and that said Samuel Clark enjoyed the good will among his customers and

patrons who consisted of many of the major oil companies operating in the state of California as well as independent producers of oil''; that at the time of the elder Clark's death his rig building business was being successfully operated as a going concern and that it consisted of various machinery and equipment used in connection therewith and in addition there were then in existence a large number of valuable contracts for the construction of oil derricks which had been made by the deceased with his customers, the exact number of which contracts and the amount of money to become due thereunder is unknown to plaintiffs who are informed and believe that said contracts involved a large and substantial amount of money; that said contracts were secured by the deceased as a result of his experience, standing, and ability in his business and that the persons who had made such contracts with the deceased had done so either as a result of previous business transactions with him or as a result of his standing and experience, all of which were well known in the oil industry; that at the time of the elder Clark's death and for several years prior thereto, the defendant John MacLeod was the trusted and confidential employee of Clark and acted as the manager of the business in which Clark was engaged and that MacLeod had complete and intimate knowledge of the customers and of the details and operation of said business; that MacLeod had no interest in the business but was merely a salaried employee; that plaintiffs are informed and believe and on such information and belief allege that at the time of Clark's death and for some time prior thereto, the defendant W. A. Trout was associated in the business in a capacity whose exact nature is not known to plaintiffs but that they are informed and believe and therefore allege that this defendant was familiar with the customers and with the details and operations of said business and received therefrom large sums of money the exact amount of which is unknown to plaintiffs; that said defendants MacLeod and Trout were the only persons other than Samuel Clark who were fully familiar with the business; that immediately subsequent to Samuel Clark's death and on October 5, 1927, the defendants MacLeod, Trout, and Catherine Clark organized a corporation under the laws of California under the name of Clark Rig Building Company in which company MacLeod

subscribed for and received 70 shares being 70 per cent of the authorized capital stock which was issued; that plaintiffs are informed and believe and on such ground allege that although 70 per cent of the capital stock of the corporation stood in MacLeod's name on the books of the corporation 50 per cent thereof, being 35 shares, belonged to Trout and was issued to MacLeod as a convenience to Trout; that no consideration was paid either by MacLeod or Trout for said stock to the corporation; that 15 per cent of the capital stock of the corporation was subscribed for and issued to the defendant, Catherine Clark, who was the senior Clark's mother, and that she gave no consideration to the corporation for the issuance of said stock to her; that the defendant Clark Rig Building Company, under the management and control of MacLeod, who was at all times and now is its president, and of Trout, took over and assumed ownership of the physical assets, property and business of Samuel Clark, completed all orders held by Clark at the time of his death which were then uncompleted and appropriated to itself and its stockholders the good name and good will of Samuel Clark and his business, without payment therefor; that the formation of the said corporation by MacLeod, Trout, and Catherine Clark was accomplished by them with the purpose of appropriating to the corporation and its stockholders the business, assets and property and the good name and good will of Samuel Clark without payment therefor; that through the instrumentality of the corporation the above named defendants did appropriate the assets, property, the going business and good will of Samuel Clark without any payment therefor; that the formation and organization of the said corporation was conceived by the defendants MacLeod, Trout and Catherine Clark for the purpose and with the intent of defrauding the minor child of Samuel Clark out of his share of the business assets, property and good will of his father's business; that MacLeod and Trout took advantage of their exclusive familiarity with the patrons of the business and the details and operation of Samuel Clark's business; that the business of the corporation was in fact established and maintained on the good will created by Samuel Clark and on the fact that his business was a going business at the time of his death and that the use of Clark's name by the defendant corporation was

never authorized by the minor child of Clark; that the defendant corporation, Clark Rig Building Company, continued in business for one year and four months subsequent to its incorporation and during this period did a gross business of approximately $2,000,000; that in addition to very substantial salaries paid by said corporation to its officers without proper authority of its board of directors, dividends amounting to approximately $2,500 per share were paid on the outstanding issued capital stock of the corporation during the aforementioned period; that the earnings of the corporation from which such salaries and dividends were paid were made out of and were a direct proximate result of the unlawful appropriation by the defendants of the going business conducted by Samuel Clark at the time of his death; that during the latter part of the year 1928 the defendants MacLeod and Trout formed the Macco Construction Company under the laws of the state of Nevada and that this last named corporation purchased the physical assets, business, property and good will of the Clark Rig Building Company by issuing to the stockholders of the latter corporation all of the capital stock of the Macco Construction Company; that plaintiffs are informed and believe and on such ground allege that the incorporation of the Macco Construction Company under the laws of the state of Nevada was designedly done for the purpose of evading the provisions of the Corporate Securities Act of California and as part of the scheme and plan to defraud Samuel Clark's minor child of his rightful share of the assets, property and good will of his father's business; that the defendant Macco Construction Company is the *alter ego* and business conduit of the defendant Clark Rig Building Company and at all times mentioned in the complaint both of said corporations had and have the same stockholders, directors and officers; that defendants have refused and neglected to pay to or to account to the minor child for the business, assets, property and good will of his father's business appropriated by them as aforesaid and in so doing have wrongfully and with intent to defraud deprived the minor of his rightful inheritance from his father; that said business conducted by the aforesaid corporations is rightfully the property of the minor and all profits derived from said business rightfully belong to said minor; that the exact amount of

such profits is not known to plaintiffs but that defendants have drawn large sums of money by way of salaries and dividends which on information and belief are alleged to have exceeded the sum of $500,000; that the only manner by which it can be determined what amount the minor is entitled to receive is through the medium of an accounting by said defendants to the plaintiffs who have no plain, speedy or adequate remedy at law; that the defendants are using and will continue to use the property of the estate wrongfully appropriated by them for their personal gain and will convert and dispose of the proceeds of the business unless auxiliary equitable relief *pendente lite* is granted by the court, wherefore a receiver should be appointed by the court in order to maintain the *status quo* during the pendency of the action. The complaint concludes with a prayer for an accounting by defendants to plaintiff as guardian of the minor child and that when the amount received by said defendants is ascertained by such accounting, judgment for such amount shall be entered against the defendants in favor of plaintiff as guardian of the said minor.

It is the contention of appellants that the amended complaint as above outlined is not obnoxious to attack on the ground that it fails to state facts constituting a cause of action but that its allegations sufficiently exhibit a cause of action by a minor heir, through his general guardian to compel an accounting for money and personal property including the good will of an established business wrongfully appropriated.

Respondents, on the other hand, maintain that the allegations of the pleading show that the foundation of the action is the claimed misappropriation of the good will of a business which by reason of the nature of said business could not survive the death of the owner and the misappropriation of profits claimed to have been derived from the completion of certain contracts for personal service which were terminated with the death of the individual who had agreed to furnish his personal skill in their performance and which having been thus terminated could be taken over by anyone who possessed the skill required for their completion. It is urged that these particular property rights of an intangible character did not continue in existence after Clark's death. It is contended that the good will of the business which was

wholly dependent on the skill and reputation of Samuel Clark did not survive his death. It is also contended that the contracts being contracts which called for the personal service of an individual who was peculiarly fitted to perform the work described in them could not continue after the death of this individual. It is further urged that the complaint shows on its face that, if there was any cause of action, it belonged, not to the minor but to the estate of Samuel Clark, deceased.

Taking up first the last-mentioned contention of respondents, it may be observed that the judgment of dismissal indicates that the trial court evidently entertained the opinion that the amended complaint is fatally defective in the respect mentioned since the judgment contains a specific proviso that the dismissal of the action shall be ''without prejudice to such rights, if any, that the plaintiffs may have in the probate proceedings of the estate of Samuel Clark, deceased''.

It is our opinion that this contention is not sound and that the judgment may not be affirmed on this ground. It may be conceded that the amended complaint is not so definite and certain in its allegations respecting the termination of the Samuel Clark estate as it might be. In the concluding paragraph of the complaint the pleader alleges ''that the defendants are using and will continue to use the property of the estate wrongfully appropriated by them . . . unless auxiliary equitable relief *pendente lite* is granted by the court''. The description of the property as ''property of the estate'' raises some uncertainty as to whether the estate of Samuel Clark, deceased, had been finally closed. It is, however, alleged in paragraph V of the amended complaint that the estate of Samuel Clark, deceased, was administered in the Superior Court of Los Angeles County; that the estate consisted of real and personal property; that all claims against the estate and all expenses of administration were paid; ''and on the 27th day of November, 1929, all of the real and personal property belonging to the said decedent and described in the inventory on file in said estate, together with all real and personal property described in the final report and account of the administratrix of said estate, together with all the real and personal property of

the decedent of every kind and character thereafter found or discovered was decreed and ordered by this court distributed in equal shares to the heirs at law of the said decedent entitled to receive the same, to-wit: Samuel Clark, Jr., the minor child of the decedent, and Marjorie H. Clark, now known as Marjorie Mackay, the wife of said decedent, and plaintiffs therefore allege that the said Marjorie Mackay and the said Samuel Clark, Jr., are the owners of and are entitled to the immediate possession of all personal and real property of every kind and character belonging to the said decedent and his said estate . . . '' Here again it is not definitely alleged that the property of the estate was in fact distributed, hence there is some basis for the argument that the pleading is uncertain in that it cannot be discovered therefrom whether or not the estate had been closed prior to the institution of the present action. It is our conclusion, however, that the claimed uncertainty is more fancied than real. It must be observed that it is alleged that on a specific date all property of the estate which had then been located and all property which might thereafter be found was ordered to be distributed in equal shares to the surviving widow and minor child of the deceased.

The effect of a final decree in a proceeding for the administration of an estate distributing the entire property of an estate to named persons who are described as the heirs at law of the decedent is to vest in such persons the absolute right and title to all the estate property. (*Estate of Garraud*, 36 Cal. 277; *Stoner* v. *Security Trust Co.*, 47 Cal. App. 216, 221 [190 Pac. 500].) The comprehensiveness of the decree of distribution as alleged in the amended complaint was sufficient to entitle appellants to institute the action for an accounting even though the property as to which the accounting is sought was not scheduled as property of the estate in the proceeding for administration.

In this connection, it is contended by appellants that in ruling on the demurrers, the trial court erroneously took into consideration the contents of a certain affidavit. Respondents, on the other hand, urge that the affidavit was not considered by the court in its ruling on the demurrers but that it was considered in connection with the application of appellants for permission to file a second amended com-

plaint and that the contents of the affidavit show that it was proper so to be considered.

The record indicates that the contention of appellants with respect to the affidavit is correct. The affidavit is entitled "Affidavit of F. H. Brown Supporting Defendants' Demurrers to Amended Complaint". It was verified and filed in court on October 13, 1932, which was the date on which the demurrers were argued before the trial court. The order sustaining the demurrers was made on October 14, 1932. So far as appears there was not then pending before the court an application for permission to file a second amended complaint. A notice of motion to vacate the judgment of dismissal under section 473 of the Code of Civil Procedure was given on October 21, 1932. This motion came on for hearing on November 4, 1932, and the court then continued it to November 9, 1932, for the purpose of permitting appellants to prepare and file in support of the motion a proposed second amended complaint. The second amended complaint was filed on November 7, 1932. The motion was denied on November 14, 1932. Finally, the very judgment of dismissal contains a reference to the affidavit in the following pertinent language: "And the court having considered the affidavit of F. H. Brown, on file herein."

The function of a demurrer is too well established to require the citation of any authorities for its description. It is axiomatic that a demurrer raises no question of fact and that it assumes the correctness and truth of the facts alleged in the pleading to which the demurrer is interposed. On the hearing of a demurrer, therefore, the court is bound by the facts as alleged in the pleading attacked by the demurrer and is not entitled to consider facts presented to it through the medium of an affidavit.

A cursory reading of the affidavit shows that it raised an issue of fact since the amended complaint demanded an accounting with respect to the equipment and machinery used by the decedent in the operation of his business, whereas the affidavit alleged that such equipment and machinery had been sold to the Clark Rig Building Company and the sale thereof confirmed during the administration of the estate of Samuel Clark and prior to the termination of administration and that the Clark Rig Building Com-

pany had received the said personal property and had paid to the administratrix of the Clark estate the agreed purchase price therefor. An additional issue of fact is raised by the affidavit in its concluding paragraph wherein it is denied that the Macco Construction Company is the *alter ego* of the Clark Rig Building Company or of respondents Mac-Leod, Trout, or Catherine Clark and the allegation is made that the Macco Construction Company has more than 150 separate stockholders.

The contention of respondents that the amended complaint shows on its face that the cause of action therein alleged is for an accounting with respect to certain intangible personal property which, under the facts alleged in the pleading, did not exist may next be considered. As above noted, the property which forms the foundation for this contention consists of uncompleted contracts for oil derricks made by the decedent with a number of his customers and the good will of the business in which the decedent was engaged at the time of his death. As to the former, it is declared that they were contracts which called for the personal services of the decedent, that they were terminated at the time of his death, that anyone who could satisfy the other parties to these contracts of his ability to complete the work contemplated by the contracts was at liberty to take them over, and that consequently no right of property inured to the decedent's estate or to his heirs at law from the contracts. As to the latter it is said that the allegations of the amended complaint show that the business in which decedent was engaged was a one-man business dependent entirely on the skill and reputation of the decedent and that the character of the business was such that the intangible property right which is denominated good will could not survive after the owner's death.

It is apparent that the basic foundation of these contentions rests in the premise that the business conducted by the decedent was entirely dependent on his skill and experience as a rig builder and his personal integrity and reputation for fair dealing. In the final analysis, the correctness of this premise rests upon the factual allegations of the pleading. If from the facts which there appear it must be declared as a matter of law that the business of the

decedent was so entirely and utterly dependent on his skill and integrity that these elements in fact constituted the business in which he was engaged, the trial court's conclusion that the pleading did not exhibit a cause of action for an accounting with respect to these property rights and that no cause of action can be stated with respect to them must be sustained.

The only allegations of the amended complaint which are descriptive of the business conducted by decedent and which relate to the uncompleted contracts state that at the time of his death the decedent "was engaged in the business of rig building under the name of 'Samuel Clark Rig Builder', as the sole owner thereof"; that said business was a successful and profitable business and the decedent enjoyed a good will among his customers and patrons; that at the time of his death, the rig building business was being successfully operated and was a going concern; that it consisted of certain equipment and machinery and in addition there were a large number of valuable contracts by which decedent had agreed to construct oil derricks for various customers; that these contracts involved a substantial total consideration to be paid by the other parties thereto which amount is unknown to appellants; that these contracts were secured by the deceased as a result of his experience, standing and ability in his business and that the persons who had entered into the contracts with the deceased had done so as a result either of previous business transactions with him or as a result of his standing and experience which were well known in the oil industry.

With respect to these allegations it may be observed that they are most general so far as the description of the business is concerned. No attempt is made to set out the details of the business which evidently consisted of the construction of derricks used in the oil industry. Obviously, the skill of the owner was not the sole element of the business for there was utilized in the construction of the derricks certain undescribed machinery and equipment of an unstated value. With respect to uncompleted orders for derricks, it is alleged that the persons who had entered into contracts for the construction of derricks by the decedent had done so either because of prior satisfactory transactions with him or be-

cause he was known to be an experienced derrick builder who enjoyed a reputation for good workmanship in the oil industry. This is obviously a most general allegation and one that might conceivably be made with respect to any person who had, prior to his death, carried on any kind of business with more than moderate success. The patrons of any mercantile establishment continue to patronize it because of prior satisfactory dealings and because the proprietor has a reputation for fair dealing and for dispensing a good quality of merchandise. Those who employ a carpenter usually do so either because they have satisfactorily employed him theretofore or because he has a reputation for good workmanship ånd fair dealing. Skill and experience are manifestly important attributes in any industry but it does not necessarily follow that they alone constitute the industry. We think, therefore, that this allegation does not so certainly show that the contracts contemplated solely the employment of the peculiar skill of Samuel Clark as a rig builder as to amount to an admission that the contracts were for purely personal services.

Furthermore, with reference to the uncompleted orders for the construction of derricks, it must be observed that the amended complaint also alleges that after the death of Samuel Clark the respondents MacLeod and Trout who, during Clark's lifetime, were associated in the business with him and who were the only persons other than Clark who were fully familiar with the details of the business and with its patrons, organized the respondent corporation, the Clark Rig Building Company, which corporation, under the management and control of MacLeod and Trout took over and completed all orders for the building of derricks which Clark had on hand at the time of his death. This allegation tends to negative the possible inference that might arise from the aforementioned general allegation that the contracts contemplated solely the employment of Clark's peculiar skill and ability as a rig builder and were therefore purely contracts for personal service which did not survive Clark's death.

It is the general rule that contracts for the performance of purely personal acts such as the agreement of an author to write a particular book, an artist to paint

a certain painting, a sculptor to produce a designated statue, are discharged by the death or disability of the individual whose peculiar talent was to be employed in the performance of such acts. The rule has been extended to the personal services of lawyers and physicians. It is, however, settled that the rule does not apply where the services are of such a character that they may be as well performed by others as by the individual with whom the contract was made. Generally speaking, a building contract does not fall within that class of agreements which are deemed to have been made because of the personal skill of the individuals who are to perform them. (*Estate of Burke*, 198 Cal. 163 [244 Pac. 340, 44 A. L. R. 1341].) Taking the allegations of the amended complaint in their entirety, we find ourselves unable to agree with the contention of respondents that the contracts which were unfinished at the time of Clark's death were of such character that it must be declared that they were contracts for the performance of purely personal services which were discharged and terminated by his death.

Section 992 of the Civil Code defines the good will of a business as the expectation of continued public patronage. The following section declares good will to be property "transferable like any other". Respondents concede that during the lifetime of the deceased the business which he conducted may have had a good will capable of transfer as property but contend that, upon the death of the sole owner, the business, due to its peculiar nature, died with him.

As above noted, the basis for this contention is identical with that which is urged in support of the proposition that the executory contracts for the construction of oil derricks which were uncompleted at the time of decedent's death were terminated thereby and that no property interest in such contracts survived thereafter because the agreements contemplated the personal services of an individual who was peculiarly skilled in the construction of oil derricks. Since we entertain the opinion that the amended complaint does not show on its face that the contracts were of such character that purely personal services were required thereby, it follows that we are not impressed by the argument that whatever good will attached to the decedent's business ceased

to exist when he died. It may properly be observed that it is obviously not necessary here to decide whether or not decedent's business actually possessed that expectation of continued public patronage which is legally defined as good will in order to arrive at the conclusion that whatever good will it may have had did not necessarily vanish when the owner died. The question of whether the business possessed a good will is a question of fact to be determined upon the trial of the action. The question here presented is whether or not the amended complaint shows on its face that the business conducted by the deceased was of such a character that it must be declared that the intangible element of good will forever terminated when the decedent died. In this connection, it may be conceded that if it can be declared as a legal proposition that the business of constructing oil derricks can never possess an expectation of continued public patronage the question of whether such expectation of patronage could survive the owner's death is not presented. We think it is clear that it may not be declared that good will cannot as a matter of law attach to the business of building oil derricks. The builder of oil derricks is not an artist although he may possess marked skill in the construction of these particular structures. Nor may it be said that he is engaged in a profession. It does not appear that an oil derrick is a structure that necessarily requires the employment of peculiar talent in its construction.

With respect to the contention that the good will of the business in which the decedent was engaged could not survive by reason of the fact that the deceased was possessed of unusual skill and that the business was entirely dependent on such skill, it should again be observed that the amended complaint alleges that the respondent, Clark Rig Building Company, under the control of respondents MacLeod and Trout, took over the property and business of the deceased after his death and completed all orders which were unfinished at the time of his death and that it is further alleged that the Clark Rig Building Company, during the sixteen-month period of its existence did a gross business amounting approximately to $2,000,000, the profits from which enabled this corporation to pay dividends of $2,500 per share on its outstanding capital stock in addition to very substantial

salaries paid to its officers. These allegations indicate that the business was not so dependent on the skill of its owner that it came to an end when he died but show on the contrary that it continued to exist and to yield very considerable financial returns. Since, therefore, the business was not so exclusively dependent on the owner's skill, experience and reputation that it could be successfully carried on by others after his death, it may not be declared as a matter of law that the expectation of continued public patronage necessarily died with him. The aforesaid allegations strongly indicate, on the contrary, that the expectation of patronage survived and that it was amply fulfilled.

■ Respondents further contend that the judgment dismissing the action in conformity with the trial court's prior order sustaining the demurrers to the amended complaint without leave to amend must be affirmed for the reason that the complaint shows on its face that the action was brought by the guardian, whereas the allegations contained in the pleading demonstrate that the cause of action was in the minor and the action should therefore have been brought by the minor through his guardian. Appellants concede that the amended complaint was vulnerable to the objection suggested but point to the fact that in the second amended complaint which they requested permission to file the title of the action was correctly stated and the defect which is characterized as technical was thereby eliminated.

The concession of appellants in this regard is proper. The allegations of the amended complaint show that the pleading attempted to state a cause of action for an accounting by the two heirs at law of Samuel Clark. It further appears that one of the heirs at law was a minor and that the other heir was his general guardian. The action should therefore have been brought by the minor through his guardian jointly with the other heir, the widow of Samuel Clark. (*Fox* v. *Minor,* 32 Cal. 111 [91 Am. Dec. 566]; *O'Shea* v. *Wilkinson,* 95 Cal. 454 [30 Pac. 588]; *Dixon* v. *Cardozo,* 106 Cal. 506 [39 Pac. 857].)

■ The general rule that an order sustaining a demurrer to a pleading must be affirmed if it appears that there was any ground upon which the order could properly have been made, might furnish a reason for affirming the judgment of dismissal. Appellants, however, have appealed not only from

the judgment but from the trial court's order denying their motion for relief under section 473 of the Code of Civil Procedure, and refusing permission to file a second amended complaint. In this connection, it is pointed out that the judgment of dismissal was rendered without notice to appellants on the same date on which the order sustaining demurrers to the amended complaint was made and within a few hours subsequent to the hearing of arguments on the demurrers and that thereby appellants were deprived of a reasonable opportunity to move for leave to file a second amended complaint prior to the entry of the judgment, for which reason they were compelled to move to vacate the judgment on the ground that it was rendered through inadvertence.

The record shows that the order sustaining demurrers to the amended complaint was made on October 14, 1932, and that on the same date the judgment of dismissal was signed by the trial court. There is no denial that the judgment was signed without notice to appellants. The circumstances presented would appear to justify application of the rule announced in *Metzger* v. *Vestal,* 76 Cal. App. 409, 418 [244 Pac. 942, 945]. It is there stated: "The rule that a party, against whom an order has been entered sustaining a demurrer without leave to amend, must ask leave to amend in order to have the ruling reviewed on appeal presupposes that the complaining party had an opportunity to ask such leave prior to the time of entry of judgment on the order. To hold otherwise would be to carry a technical rule to the extreme of absurdity." The fact that the original complaint filed in the action had been once amended would not of itself justify a refusal of permission further to amend. (*Schaake* v. *Eagle etc. Can Co.,* 135 Cal. 472 [63 Pac. 1025, 67 Pac. 759]; *James* v. *Steifer Min. Co.,* 35 Cal. App. 778, 788 [171 Pac. 117].) The notice of motion to vacate the judgment was given on October 20, 1932. The ground of the motion was stated to be inadvertence and the affidavit filed in support of the motion alleges that the judgment was entered and filed without notice to appellant's counsel who were thereby deprived of the opportunity to ask leave to amend. The order made by the trial court on November 14, 1932, whereby the motion to vacate the judgment was denied shows that the trial court also then considered the

motion as an application of appellants for leave to amend since the order recites that "plaintiff's motion to vacate and set aside judgment and for leave to file second amended complaint, heretofore submitted is now by the court denied." The above cited decisions furnish ample authority to entertain the appeal from the judgment of dismissal notwithstanding the fact that no application for leave to file a second amended complaint was presented prior to the entry of the judgment. The circumstances presented by the record indicate that appellants were deprived of an opportunity seasonably to apply for permission to amend.

It is our conclusion that the order sustaining the demurrers for failure to show facts constituting a cause of action without leave to amend may not be sustained on the ground that the action should have been commenced by the minor through his guardian. This defect was remedied by the second amended complaint which the trial court should have permitted to be filed. The result which would be achieved by affirming the judgment dismissing the action would be that what appears to be a meritorious cause of action for an accounting for the misappropriation of valuable property rights might be entirely lost to the minor if the judgment is affirmed. Such action should be avoided if possible. (*Dixon* v. *Cardoza, supra.*)

Various objections on the grounds of uncertainty, indefiniteness and ambiguity were urged by the special demurrers to the amended complaint. It is obvious that the order sustaining the demurrers was not based upon them but upon the ground that the pleading did not and could not be made to state a cause of action. Furthermore, the sustaining of special demurrers which are in aid of the pleading to which such demurrers are interposed would not justify the inclusion in the order of a refusal of permission to amend. We have heretofore indicated our opinion that the contentions advanced by respondents in support of the judgment are not impressive.

The judgment is therefore reversed and the trial court is directed to overrule the general demurrers interposed by respondents for failure to state facts constituting a cause of action and to permit appellants to file the second amended complaint heretofore submitted by them. The attempted

appeal from the order denying the motion for a new trial is dismissed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 28, 1935, and an application by respondents to have the cause heard in the Supreme Court after judgment in the District Court of Appeal, was denied by the Supreme Court on April 29, 1935.